UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------- x

                                             :

THE SWATCH GROUP MANAGEMENT
SERVICES LTD.,                              :

                      Plaintiff,         :      ELECTRONICALLY FILED

              -against-           :      No. 11 # CV 1006 (AKH)

BLOOMBERG L.P.,                   :

                    Defendant.       :

                                             :

---------------------------------------------------------------------- x

**MEMORANDUM OF LAW IN SUPPORT OF BLOOMBERG L.P.'S**
**MOTION TO DISMISS SWATCH'S COMPLAINT**

John M. DiMatteo
Thomas H. Golden
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York  10019
(212) 728-8000

Attorneys for Defendant Bloomberg L.P.

# Table of Contents

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS .................................................................................... 3

ARGUMENT ...................................................................................................... 4

I.   The Sound Recording Of The Swatch Earnings Call Is Not Entitled To Copyright
     Protection ................................................................................................... 5

     A.  The Earnings Call Itself Was A Live News Event And Therefore Not Entitled To
         Copyright Protection ............................................................................... 5

     B.  The Sound Recording Swatch Made Of The Call Lacks The Requisite Creativity To
         Qualify For Copyright Protection .............................................................. 7

II.  Bloomberg Actions Do Not Constitute Copyright Infringement ............................ 9

     A.  Bloomberg Did Not Copy Swatch's Sound Recording ..................................... 9

     B.  The Transcript Is Not a Derivative Work Of Swatch's Sound Recording ............... 11

     C.  Bloomberg's Use of the Sound Recording is a "Fair Use" ............................... 11

III. Swatch Has Not Met The Statutory "48 Hour" Pre-notification Requirement to Bring Suit
     For Copyright Infringement of a Live Broadcast ......................................... 15

CONCLUSION .................................................................................................. 17

## TABLE OF AUTHORITIES

### FEDERAL CASES

*America Geophysical Union v. Texaco Inc.*,
  60 F.3d 913 (2d Cir. 1994)......................................................................12

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009)...........................................................................4, 5

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................................4

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
  448 F.3d 605 (2d Cir. 2006)...................................................................12

*Boyle v. Stephens Inc.*,
  44 U.S.P.Q.2d (BNA) 1138 (S.D.N.Y. Aug. 27, 1997).........................4, 5

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994)...........................................................................12, 13

*Castle Rock Entertainment, Inc. v. Carol Publishing Group, Inc.*,
  150 F.3d 132 (2d Cir.1998).....................................................................12

*Feist Publ'ns, Inc., v. Rural Telegraph Serv., Inc.*,
  499 U.S. 340 (1991)......................................................................2, 7, 8, 9

*Football Association Premier League Ltd. v. YouTube, Inc.*,
  633 F. Supp. 2d 159 (S.D.N.Y. 2009).....................................................16

*Hackney v. Lehrer McGovern Bovis of Pa.*,
  42 U.S.P.Q. 2d (BNA) 1727 (E.D. Pa. Apr. 25, 1997)............................5

*Harper & Row, Publishers, Inc. v. Nation Enterprises*,
  471 U.S. 539 (1985)........................................................................7, 13, 14

*Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co.*,
  62 F.3d 69, 71 (2d Cir. 1995)...................................................................4

*Kregos v. Associated Press*,
  937 F.2d, 700 (2d Cir. 1991)..................................................................10

*Matthew Bender & Co. v. West Publishing Co.*,
  158 F.3d 674 (2d Cir. 1998)......................................................................8

*Miller v. Universal City Studios, Inc.*,
    650 F.2d 1365 (5th Cir. 1981) ................................................................7

*NBA v. Motorola, Inc.*,
    105 F.3d 841 (2d Cir. 1997)...............................................................5, 6

*NFL v. Rondor, Inc.*,
    840 F. Supp. 1160 (N.D. Ohio 1993).....................................................16

*N.Y. Mercantile Exch., Inc. v. Intercont'l Exch., Inc.*,
    497 F.3d 109 (2d Cir. 2007)...................................................................10

*Production Contractors, Inc. v. WGN Continental Broadcasting Co.*,
    622 F. Supp. 1500 (N.D. Ill. 1985) .....................................................5, 6

*Quincy Cablesystems, Inc., v. Sully's Bar, Inc.*,
    650 F. Supp. 838 (D. Mass. 1986) .........................................................16

*Rosemont Enterprises, Inc. v. Random House, Inc.*,
    366 F.2d 303 (2d Cir. 1966)....................................................................7

*Walker v. Time Life Films, Inc.*,
    615 F. Supp. 430 (S.D.N.Y. 1985) .....................................................9 , 10

## FEDERAL STATUTES

37 C.F.R. § 201.22 ................................................................................16

17 U.S.C. § 102.......................................................................................5

17 U.S.C. § 106.......................................................................................9

17 U.S.C. § 107................................................................................11, 12

17 U.S.C. § 114.......................................................................................9

17 U.S.C. § 411................................................................................2, 16

## TREATISES & LEGISLATIVE REPORTS

1 Melvin B. Nimmer & David Nimmer,
    *Nimmer on Copyright* §§ 2.03, 2.09, 2.10, 13.03 (2010)...........................6

H.R. Rep. No. 94-1476 (1976)...................................................................8

Defendant Bloomberg L.P. respectfully submits this memorandum of law in support of its motion, pursuant to Rule 12(b)(6), to dismiss the complaint filed by plaintiff The Swatch Group Management Services, Ltd.

## PRELIMINARY STATEMENT

The case before this Court has nothing to do with protecting copyrights, but rather reflects an effort by a publicly-held company to prevent full disclosure of material financial and operating information it provided to a select group of analysts.

Swatch, a publicly-traded multinational corporation, hired a third party to host a telephone conference to which a handful of analysts had been invited to learn material information about the company's financial and operating results. During the call, Swatch executives made a few brief introductory remarks about those results, and spent the vast majority of the call taking questions from the analysts. Bloomberg lawfully gained access to the call, and published to its readers an independently-created audio recording and transcript of the statements made, thereby disseminating to the entire market the information that Swatch sought to disclose only to a chosen few.

Swatch has no meaningful copyright interest in a factual recitation of its operating results, or in a series of extemporaneous questions from non-Swatch employees and Swatch's on-the-spot answers. Indeed, Swatch does not claim that its artwork, designs, mechanisms or graphics were misappropriated.

Nevertheless, Swatch has sued Bloomberg for copyright infringement. In doing so, Swatch seeks to use the protections provided by the copyright law to stop news organizations like Bloomberg from making a permanent record of corporate history available to the public for posterity. That Swatch would seek to limit the distribution of its earnings call is not surprising.

1

During the course of that call, Swatch made disparaging comments about a business partner, admitted to a shortfall of parts needed to meet sales expectations, and confessed that exchange rates had an effect on its profits outlook.  While Swatch may prefer that such statements not be available to the general public, U.S. copyright law provides it with no relief, for the simple reason that the call's contents are devoid of creative expression.  Rather, the call was merely a recitation of facts, which as a matter of law may not be copyrighted because  "they . . .  are part of the public domain available to every person." *Feist Publ'ns, Inc., v. Rural Tel. Serv., Inc.*, 499 U.S. 340, 348 (1991) (internal quotation omitted).  In short, the information conveyed – Swatch's financial data and results – and the manner in which that information was conveyed – in a live earnings call – are not protectable under the Copyright Act.

Nor does Swatch allege any actionable infringement by Bloomberg.  Bloomberg's own recording of the earnings call does not violate any possible rights Swatch may have in its sound recording.  Further, Bloomberg's written transcript of the call is ***not***, as a matter of law, a "derivative work" of Swatch's sound recording.  And, even assuming that Swatch can articulate some copyright protection to its sound recording, Bloomberg's use of its own recording and transcript is a "fair use" under the law.

Finally, Swatch's failure to comply with the statutory "48 hour" pre-notification requirement under 17 U.S.C. § 411(c) for filing a copyright infringement action on a recording of a live event precludes Swatch from suing Bloomberg.

For these reasons, and as discussed more fully below, Bloomberg moves to dismiss the complaint with prejudice.

2

### STATEMENT OF FACTS

Bloomberg is a worldwide leader in business and financial news reporting. (Compl. ¶ 13.)  Bloomberg provides individuals and companies with access to financial information regarding many of the world's largest corporations and is a vital news resource to investors, financial institutions, and the general public.

The Swatch Group Ltd. is a multinational corporation that designs and manufactures timepieces.  Its shares are traded on the Swiss Exchange.  (Compl. ¶ 5.)   In addition, U.S. investors and shareholders can trade Swatch shares in the United States through American Depository Receipts created by the Bank of New York Mellon.  (*See* www.adrbnymellon.com/dr_profile.jsp?cusip=870123106).

In February 2011, Swatch hosted an earnings call for a group of securities analysts.  (Compl. ¶ 7.)  The purpose of the call was for Swatch "to make a presentation to the invited securities analysts of key financial figures for 2010 and for the analysts to ask questions of the companies senior management."  (Compl. ¶ 7.)  The call started with a short comment by Swatch's CEO followed by an extended question-and-answer session.  It provided detailed information about the financial performance of Swatch Group Ltd. and its future projections. Chorus Call SA, a third party, transmitted and simultaneously recorded the call, "resulting in a sound recording of the live Earnings Call (the 'Work')."  (Compl. ¶ 9.)

3

Swatch alleges that Bloomberg made an unauthorized "sound recording of the Earnings Call while the call was in progress" (Compl. ¶ 15; *see also* the sound recording of the call as published by Bloomberg, Exhibit A to the Affidavit of Thomas H. Golden).[1]  Swatch further alleges that, in addition to making its own recording of the call, Bloomberg "also created an unauthorized derivative work" by creating its own transcript of the earnings call, which Bloomberg subsequently "published, displayed and distributed."  (Compl. ¶¶ 16-17; *see also* Exhibit B, a copy of the transcript.)

Swatch does not allege that Bloomberg had access to Swatch's sound recording of the earnings call.  Thus, Swatch does not, and cannot, claim that Bloomberg copied Swatch's recording.  Swatch also does not allege that it has a copyright to the contents of the earnings call itself, that is, the financial statements and the questions and answers state during the call.  Finally, Swatch does not allege that there was any creativity involved in recording the call.

## ARGUMENT

Swatch's claims cannot survive a Rule 12(b)(6) motion to dismiss unless its Complaint alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although this Court "must accept as true all of the allegations contained in a complaint," that tenet "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Similarly, "[t]hreadbare recitals of the elements of a

---

[1]     "In ruling on a motion to dismiss for failure to state a claim, a court may consider documents and exhibits upon which the complaint relies and which are integral to the complaint without converting the motion to one for summary judgment." *Boyle v. Stephens Inc.*, 44 U.S.P.Q.2d (BNA) 1138, 1139 (S.D.N.Y. Aug. 27, 1997); *see also Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co.*, 62 F.3d 69, 71 (2d Cir. 1995).

cause of action, supported by mere conclusory statements, do not suffice." *Id.* "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Where an examination of the work in question reveals the absence of the statutory requisites for a copyright claim, dismissal under Rule 12(b)(6) is appropriate. *See Boyle*, 44 U.S.P.Q.2d at 1141-42; *see also Hackney v. Lehrer McGovern Bovis of Pa.,* 42 U.S.P.Q.2d (BNA) 1727, 1728-29 (E.D. Pa. Apr. 25, 1997)  (dismissing complaint on a Rule 12(b)(6) motion where an examination of plaintiff's design revealed that key aspects were ideas and thus not protectable in copyright).

## I.     The Sound Recording Of The Swatch Earnings Call Is Not Entitled To Copyright Protection

### A.     The Earnings Call Itself Was A Live News Event And Therefore Not Entitled To Copyright Protection

It is well established that unscripted "live events" are not within the ambit of the Copyright Act.  To come within that ambit, a work must satisfy two requirements: it must be an original work of authorship, and it must be fixed in a tangible medium. *See* 17 U.S.C. § 102(a). By definition, live events are not "authored" and thus are not considered "works of authorship" under Section 102 (a).  Two cases are often cited for this principle: *Production Contractors, Inc. v. WGN Continental Broadcasting Co.*, 622 F. Supp. 1500 (N.D. Ill. 1985), and *NBA v. Motorola, Inc.*, 105 F.3d 841 (2d Cir. 1997).

In *Production Contractors*, a promoter of a Christmas parade brought a declaratory judgment suit against a television station that was planning to attend the parade and televise it for its own broadcast.  The promoter argued that it "owned" the production of the parade itself, and that, by simultaneously broadcasting the parade, the television station would infringe upon the promoter's copyright in the event.  The court disagreed and dismissed the case on summary judgment.  In doing so, it found that a live parade contained no original creative

5

authorship and was thus not a "work of authorship" entitled to copyright protection. *Prod.*
*Contractors*, 622 F. Supp. at 1503, citing 1 Melvin B. Nimmer & David Nimmer, *Nimmer on*
*Copyright* §2.03[B][2] (2010).  Similarly, Swatch, like the parade promoter, is attempting to
claim copyright ownership over a live event. The only difference is that here, Swatch seeks to
use the copyright law for the sole purpose of hiding its company's statements from public view.

   In *NBA v. Motorola, Inc.*, the NBA sued pager companies for providing customers
with up-to-the-minute basketball scores.  The NBA claimed copyright ownership in the live
games themselves.  The Second Circuit rejected that argument, holding that basketball games
were not "original works of authorship" under the Copyright Act. *NBA*, 105 F.3d at 846.  The
Court noted that, prior to 1976, it was unclear whether recordings of sporting events were
protectable, prompting Congress to create express statutory protection for such broadcasts.[2]  That
protection, however, did ***not*** extend to the underlying events:

> Congress found it necessary to extend such protection to recorded
> broadcasts of live events.  The fact that Congress did not extend
> such protection to the events themselves confirms our view that the
> district court correctly held that appellants were not infringing a
> copyright in the NBA games.

*Id.* at 847.

   As summarized in *Nimmer*: Copyrightable expression is located "not in the rough-
and-tumble on the field, but instead of the activities of the cameramen and director, the
conclusion follows that the athletic event itself is not subject to copyright protection." 1 *Nimmer*
*On Copyright* § 2.09 [F].  Here, the Swatch earnings call was a live event and, like the rough-
and-tumble on the field, was not entitled to copyright protection.

---

[2] The protection of such broadcasts, described in Section 411 of the Copyright Act, places
certain specific requirements upon a would-be copyright holder, which as discussed in
Section III *infra*, Swatch made no attempt to meet.

In that same regard, Swatch is not entitled to any copyright protection for the earnings call itself because "all facts – scientific, historical, biographical, and news of the day, . . . may not be copyrighted and are part of the public domain available to every person." *Feist*, 499 U.S. at 348. By definition, the Swatch "earnings call" included only financial facts and news related to the company. It started with a brief summary of financial results followed by a question-and-answer session between analysts and company executives. No part of the call is protectable under the Copyright Act. As stated by the Supreme Court:

> That there can be no valid copyright in facts is universally understood. The most fundamental axiom of copyright law is that no author may copyright his ideas *or the facts he narrates*.

*Feist*, 499 U.S. at 344-345 (emphasis added) (internal quotation & alterations omitted) quoting *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 556 (1985).[3]

Thus, Swatch does not, and cannot, claim that the earnings call itself is entitled to copyright protection. *Feist*, 499 U.S. at 348.

**B.     The Sound Recording Swatch Made Of The Call Lacks The Requisite Creativity To Qualify For Copyright Protection**

Perhaps recognizing that the earnings call itself cannot be protected under the Copyright Act, Swatch bases its complaint on its own sound recording it made of the call. (Compl. ¶ 9.) The recording, however, is devoid of any originality or creative choice. (*See* Golden Aff. Exhibit A.) As such, it does not meet the required minimum level of creativity required by the Copyright Act.

---

[3]     *See also Rosemont Enters., Inc. v. Random House, Inc.*, 366 F.2d 303, 306 (2d Cir. 1966), ("Furthermore, while the mode of expression employed by White is entitled to copyright protection, he could not acquire by copyright a monopoly in the narration of historical events."); *see also Miller v. Universal City Studios, Inc.*, 650 F.2d 1365, 1368 (5th Cir. 1981) ("It is well settled that copyright protection extends only to an author's expression of facts and not to the facts themselves.").

7

To be an original work of authorship protectable by copyright, a work must possess some creativity. *Feist*, 499 U.S. at 344-45; *see also Matthew Bender & Co. v. West Publ'g Co.*, 158 F.3d 674, 681 (2d Cir. 1998) ("The 'originality' standard requires that the work result from 'independent creation' *and* that the author demonstrate that such creation entails a 'modicum of creativity.'" (emphasis in original.))  While a sound recording of a live event may be entitled to copyright protection, *see NBA*, 105 F.3d at 847, such protection applies only if there is significant creativity involved in orchestrating a broadcast of the event.  It is the multifaceted and artfully editorialized rendition of spectator events that Congress intended to protect by extending copyright protection to live broadcasts:

> When a football game is being covered by four television cameras, with a director guiding the activities of the four cameramen and choosing which of their electronic images are sent out to the public and in what order, there is little doubt that what the cameramen and the director are doing constitutes "authorship."

H.R. Rep. No. 94-1476, at 52 (1976).

Indeed, Congress understood that, by contrast, "purely mechanical" fixations of sound are outside the scope of protection under the Copyright Act:

> Aside from cases in which sounds are fixed by some purely mechanical means without originality of any kind, the copyright protection that would prevent the reproduction and distribution of unauthorized phonorecords of sound recordings is clearly justified.

H.R. Rep. No. 94-1476, at 52 (1976); *see also* 1 *Nimmer on Copyrights* § 2.10[A][2][b] (explaining that "if a sound recording is a simple direct recording, involving neither compilation nor editing of sounds, nor any electronic processing more complex than simply pressing the 'start' button on a tape recorder," it is not entitled to protection in copyright.)

Here, Swatch did not employ any artistic creativity in recording the earnings call. Indeed, Swatch admits that all it did was hire a third party to record the call.  (Compl. ¶¶ 8-9.)

8

Moreover, the *entire* call was recorded; no editorial selection was made. Put simply, there was no "creative spark" involved in the recording of the call worthy of copyright protection. *Feist,* 499 U.S. at 345.

In sum, Swatch's sound recording of a live news event, devoid of any element of originality, is not entitled to copyright protection as a matter of law. For this reason alone, Swatch's complaint for copyright infringement should be dismissed. *See Id.* at 364.

## II.    Bloomberg Actions Do Not Constitute Copyright Infringement

Swatch's copyright claim fails for the additional reason that Bloomberg's actions do not constitute an act of copyright infringement.

### A.    Bloomberg Did Not Copy Swatch's Sound Recording

The Copyright Act provides to each copyright holder a specific bundle of exclusive rights in the holder's protected work. Where, as here, the relevant work consists of a sound recording, the owner's exclusive rights consist of making copies of that recording. *See* 17 U.S.C. §§ 106 & 114.

In the present case, Bloomberg is not alleged to have copied Swatch's sound recording. Rather, Bloomberg is alleged to have made its own recording of the Swatch earnings call. (Compl. ¶ 15.) As such, the facts in the present case are directly analogous to two newspaper reporters recording the same public announcement. Even if the two sound recordings were virtually identical, neither reporter could sue the other for copyright infringement. Further, when the similar nature of two works is attributable to a common source, one such work does not infringe the other, regardless of whether the underlying work is protected by copyright. S*ee Walker v. Time Life Films, Inc.*, 615 F. Supp. 430, 435 (S.D.N.Y. 1985) ("[C]opyright protection does not extend to historical or contemporary facts, material traceable to common sources or in

the public domain, and scenes a faire. Many of the alleged similarities between [plaintiff's] book and the [accused] film fall into one of these categories.").

Swatch will likely argue that because it simultaneously recorded the earnings call as it occurred, it can claim copyright protection under the live broadcast provisions of Sections 101 and 102(a) of the Copyright Act. But the simple mechanical recording of the call on behalf of Swatch – without direction, selection, or other creative component – precludes Swatch from being able characterize the event as a "broadcast" worthy of protection under the Act.

Finally, there is no real dispute that both the content and recording of the earnings call constitute market-moving and material "financial news." For that reason, it becomes impossible to separate any artistic expression in Swatch's sound recording and the newsworthy and historical facts that shareholders and the investing public learn by listening to it. Thus, the facts and expression are considered "merged," and this precludes Swatch from asserting a claim of copyright infringement for the use of any recording or transcript of the call. *See, e.g. N.Y. Mercantile Exch., Inc. v. Intercont'l Exch., Inc.,* 497 F.3d 109, 116-17 (2d Cir. 2007) ("To ensure free access to ideas, courts have applied the merger doctrine such that even expression is not protected in those instances where there is only one or so few ways of expressing an idea that protection of the expression would effectively accord protection to the idea itself."); citing *Kregos v. Associated Press,* 937 F.2d, 700, 705 (2d Cir. 1991); *see also, Nimmer on Copyright* §13.03[B][3].

In sum, Swatch cannot, as a matter of law, assert that Bloomberg's use of its own independently-created sound recording and transcript of a public event is an act of copyright infringement.

**B.**     **The Transcript Is Not a Derivative Work Of Swatch's Sound Recording**

Essentially admitting that Bloomberg did not copy any material created by Swatch, Swatch also alleges that Bloomberg created an unauthorized derivative work by creating a "written transcript" of the earnings call. (Compl. ¶ 16.) Specifically, Swatch contends that Bloomberg infringed the Swatch copyright by "creating a derivative work – namely, the Transcript . . . thereby violating 17 U.S.C. § 106." (Compl. ¶ 25.) Swatch further contends that Bloomberg infringed Swatch's copyright by "distributing and publishing the transcript, thereby violating 17 U.S.C. § 106." (Compl. ¶ 24.) Swatch is wrong.

The scope of a copyright owner's exclusive rights in a sound recording under Section 106 of the Copyright Act is expressly limited by Section 114, which states:

> The exclusive right of the owner of copyright in *a sound recording* under clause (2) of section 106 is limited to the right to prepare a derivative work in which the *actual sounds* fixed in the sound recording are rearranged, remixed or otherwise altered in sequence or quality.

17 U.S.C. § 114(b) (emphasis added.)

The creation of a written transcript that does not contain any "actual sounds," is not a "derivative work" of the sound recording under Section 114(b). Consequently, Swatch cannot claim any derivative rights in a written transcript of the call, and cannot sue Bloomberg in copyright based on Bloomberg's preparation and publication of its own transcript of that call.

**C.**     **Bloomberg's Use of the Sound Recording is a "Fair Use"**

Even if Swatch's sound recording of the earnings call contained some modicum of protectable subject matter and Bloomberg's actions would constitute one or more acts of copyright infringement, Bloomberg would not be liable for such infringement under the fair use doctrine. 17 U.S.C. § 107 provides that the fair use of a copyrighted work for purposes such as criticism, comment, and news reporting is not an infringement of copyright.

11

Whether such "fair use" exists involves a case-by-case determination using four

non-exclusive, statutorily provided factors in light of the purposes of copyright.  *See Bill Graham*

*Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605 (2d Cir. 2006).  Those factors are:

> (1) the purpose and character of the use, including whether such
> use is of a commercial nature or is for nonprofit educational
> purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portions used in relation to
> the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of
> the copyrighted work.

17 U.S.C § 107.  "The ultimate test of fair use  . . . is whether the copyright law's goal of

promoting the Progress of Science and useful Arts would be better served by allowing the use

than by preventing it." *Bill Graham Archives*, 448 F.3d at 608 quoting *Castle Rock Entm't, Inc.*

*v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 141 (2d Cir.1998) (internal citations omitted).

Fair use is an affirmative defense to a claim of infringement; as such, Bloomberg

bears the burden of proof in establishing the fair use of Swatch's tenuous copyright in its sound

recording of the earnings call. *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590

(1994); *Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 918 (2d Cir. 1994) (party claiming

fair use "typically carries the burden of proof as to all issues in the dispute").  While the fair use

inquiry is normally fact-intensive, in the unique situation of the present case, the issue can be

decided on a Rule 12(b)(6) motion because the facts underlying the fair use defense are not in

dispute.

With regard to the "purpose and character of the use," there is no dispute that

Bloomberg is using the sound recording and transcript as part of its news reporting service.

Indeed, Swatch acknowledges in its Complaint that Bloomberg "is a leading provider of financial

12

and business information." (Comp. ¶ 13.) "News reporting is one of the examples enumerated in § 107 to 'give some idea of the sort of activities the courts might regard as fair use under the circumstances.'" *Harper & Row,* 471 U.S. at 561 (quoting S. Rep. No. 94-473, at 61 (1975)).

In the present case, the public good is served by dissemination of the factual information provided in the earnings call to the public instead of restricting access to the information to a select group of analysts. That Bloomberg is a "for profit" news service does not alter the fact that the fair use doctrine – in synch with the First Amendment – protects the public interest in receiving news, even if that news is reflective of other's work. As such, the Supreme Court rejected the notion that the commercial nature of a use could by itself be a dispositive consideration: "[N]early all of the illustrative uses listed in the preamble paragraph of § 107, including news reporting, comment, criticism, teaching, scholarship, and research . . . 'are generally conducted for profit,'" and Congress "could not have intended" a rule that commercial uses are presumptively unfair. *Campbell,* 510 U.S. at 584 (quoting *Harper & Row,* 471 U.S. at 592 (Brennan, J., dissenting)). Therefore, the first factor weights in favor of finding that Bloomberg's use is "fair."

With regard to the "nature of the copyrighted work," Swatch is entitled to little or no copyright protection in a sound recording of an earnings call for the various reasons shown above. Moreover, where, as here, the work is factual, a court is more likely to find that copying is permissible under the of fair use doctrine. *Harper & Row*, 471 U.S. at 563 ("The law generally recognizes a greater need to disseminate factual works than works of fiction or fantasy.") Further, it is indisputable that Swatch's earnings call was made available to the public – specifically, to the numerous analysts invited to the call. That Swatch chose to make the earnings call public also weighs in favor of a finding of fair use. Finally, the lack of creativity

13

involved in the making of the sound recording further weighs in favor of finding Bloomberg's use of its own sound recording and transcript were "fair" under the law.

With regard to the "amount and substantiality of the portion used," it is true that Bloomberg recorded the entire earnings call. However, to perform its news reporting service, it was necessary for investors and the general public to have access to the entire call in order to be able to evaluate and understand the full context of Swatch's message to its analysts concerning its financial performance and prospects for the future. Therefore, this factor also favors Bloomberg, or at most is neutral.

Finally, the "effect of the use upon the potential market for or value of the copyrighted work" is one of the more important elements of fair use. *See Harper & Row*, 471 U.S. at 566. Swatch is not seeking copyright protection to protect its investment in "creating" the earnings call. Rather, Swatch is seeking to use the copyright laws to prevent the dissemination of its underlying financial information. Swatch does not allege that it intends to profit from the re-distribution of its sound recording. Indeed, Swatch does not allege any actual harm from Bloomberg's action. Thus, Bloomberg's publication of the written transcript and its own sound recording of the earnings call do not adversely effect Swatch's ability to profit on its copyright. Indeed, it is apparent from the allegations of the complaint that Swatch has no desire or ability to profit from the further dissemination of the sound recording of the earnings call. Instead, Swatch is seeking to use the copyright laws solely to prevent public access to basic financial information. Thus, the fourth factor weighs heavily in favor of a finding of fair use.

After balancing the four factors, it is clear that to the extent that Swatch is entitled to any protection in the sound recording of the factual information contained in its earnings call, the public benefit of allowing access to the underlying factual information far outweighs

Swatch's tenuous copyright in the sound recording. The intent of the Copyright Act is best served by the public dissemination of facts and news. The Copyright Act was never intended as a tool to cloak in secrecy the financial information reported by a publicly traded company. Therefore, this Court should find that Bloomberg's use of its own sound recording and transcript of the earnings call is a fair use and dismiss Swatch's complaint on this ground as well.

**III.   Swatch Has Not Met The Statutory "48 Hour" Pre-notification Requirement to Bring Suit For Copyright Infringement of a Live Broadcast**

Because the copyright law requires that any expression be fixed in a tangible medium, Congress introduced Section 411(c) to allow broadcasters some degree of protection if, and only if, they followed specific notice requirements prior to the broadcast they would seek to later protect. The Act expressly forbids copyright holders the right to claim ownership as an afterthought. Swatch claims copyright infringement of a sound recording of a live telephone conference. Swatch alleges that its earnings call was recorded by Swatch's agent simultaneously with its original transmission and thus qualifies as a "live broadcast" within the meaning of the statute. Even if these allegations were true, Swatch failed to meet the statutory prerequisite to seek judicial protection of a live broadcasts. The Copyright Act provides that a would-be plaintiff claiming a copyright interest a "live transmission" consisting of sounds, images or both must follow specific procedures before suing for copyright infringement. In particular, Section 411(c) of the Copyright Act specifically requires that the copyright owner:

> serves notice upon the infringer, not less than 48 hours before such fixation, identifying the work and the specific time and source of its first transmission, and declaring an intention to secure copyright in the work

17 U.S.C. § 411(c); *see also* 37 C.F.R. § 201.22 (setting forth requirement for contents and service of potential infringement notices, including that notices must be clearly labeled "ADVANCE NOTICE OF POTENTIAL INFRINGEMENT").

15

Swatch does not allege that it informed Bloomberg, prior to the earnings call, of potential copyright infringement or any intent to register a copyright in the call, as mandated by Section 411(c). Swatch also does not allege that it provided any notice to Bloomberg conforming with 37 C.F.R. § 201.22.

To be sure, cases brought pursuant to 17 U.S.C. § 411(c) tend to concern situations where an audiovisual work is copied and/or retransmitted and not, as here, where a party independently creates a recording of a conference call. Those cases are nevertheless instructive about what a copyright owner must do to bring an infringement action. For example, in *NFL v. Rondor, Inc.,* 840 F. Supp. 1160, 1166 (N.D. Ohio 1993), the NFL sought to prevent the unlicensed broadcast of its football games into certain bars violating local "blackout" rules. The court noted approvingly that the NFL had complied fully with the notification requirement of 17 U.S.C. § 411(c) by sending potential infringers letters entitled "Advance Notice of Potential Infringement." *Id.* at 1163. The letters, sent weeks before the live football telecasts, warned the defendants of the times of the telecasts, the specific games being telecast, and the possibility of liability if the defendants chose to ignore the letter and intercept transmission of the telecasts. *Id.* at 1164. *See also Football Ass'n. Premier League Ltd. v. YouTube, Inc.*, 633 F.Supp.2d 159 (S.D.N.Y. 2009) (holding that soccer league properly served advance notice on defendants pursuant to 17 U.S.C. § 411(c) by sending 344 notices of potential infringement).

At least one other district court has dismissed a complaint for failure to satisfy the notice prerequisite of Section 411(c). *See Quincy Cablesystems, Inc., v. Sully's Bar, Inc.*, 650 F. Supp. 838, 850-51 (D. Mass. 1986) (granting motion to dismiss based on plaintiff's failure to allege compliance with the statutory prerequisites for filing suit including compliance with Sections 411 (a) and 411(c)).

Here, prior to seeking relief from this Court for a violation of the Copyright Act, Swatch was required under the Copyright Act to send a notice letter to potential infringers at least 48 hours prior to the earnings call.  Because Swatch did not comply with those statutory requirements, the Court should dismiss this action for copyright infringement.

## CONCLUSION

For the foregoing reasons, the Court should grant Bloomberg's motion to dismiss Swatch's complaint with prejudice.


Dated:   New York, New York
         March 31, 2011

                    Respectfully submitted,

                    WILLKIE FARR & GALLAGHER LLP


                    John M. DiMatteo (jdimatteo@willkie.com)
                    Thomas H. Golden (tgolden@willkie.com)
                    787 Seventh Avenue
                    New York, New York 10019
                    (212) 728-8000


                    Attorneys for Defendant Bloomberg L.P.