UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x

                             :

THE SWATCH GROUP MANAGEMENT
SERVICES LTD.,                               :

                Plaintiff,        :    ELECTRONICALLY FILED

           -against-          :    No. 11 CV 1006 (AKH)

BLOOMBERG L.P.,                   :

            Defendant.      :

                             :

------------------------------------------------------------------- x

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S
MOTIONS FOR (1) JUDGMENT ON THE PLEADINGS AND (2) ORDER STRIKING
<u>DEFENDANT'S AFFIRMATIVE DEFENSES</u>**

John M. DiMatteo
Thomas H. Golden
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
Telephone:  (212) 728-8000

*Counsel for Defendant Bloomberg L.P.*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...........................................................................................1

FACTS ............................................................................................................................2

ARGUMENT ..................................................................................................................4

I.    SWATCH IS NOT ENTITLED TO JUDGMENT ON THE PLEADINGS
ON ITS COPYRIGHT INFRINGEMENT CLAIM ................................................6

    A.    The "Law of the Case" Doctrine Does Not Entitle Swatch To
Judgment On The Pleadings. ........................................................................6

    B.    Various Aspects Of Swatch's Copyright Infringement Claim Fail
As A Matter of Law. ....................................................................................8

        1.    Bloomberg's Written Transcript Of The Earnings Call Is
Not An Infringing Derivative Work. ................................................8

        2.    Swatch Is Not Entitled To Copyright Protection For Factual
Material Disclosed During The Call, Or For Unauthored,
Spontaneous Responses To Analysts' Questions. ...........................9

    C.    Swatch Is Not Entitled To Judgment On The Pleadings On The
Remaining Aspects Of Its Copyright Infringement Claim Given
Unresolved Factual Disputes Regarding The Extent To Which
There Is Any Creativity In The Call. ........................................................13

        1.    Bloomberg Strongly Disputes The Extent To Which The
Executives' Performances Reflect Any Authorship Or
Creativity .....................................................................................14

        2.    Bloomberg Strongly Disputes Swatch's Claim That The
Manner In Which The Call Was Recorded Reflects Any
Creativity .....................................................................................15

    D.    Swatch Did Not Comply With The 48 Hour Notice Requirement
Set Forth In Section 411(c) Of The Copyright Act...................................17

II.    SWATCH IS NOT ENTITLED TO JUDGMENT ON THE PLEADINGS
ON BLOOMBERG'S COUNTERCLAIM FOR FAIR USE................................19

    A.    The Purpose And Character Of Bloomberg's Use Of The Earnings
Call Weigh In Bloomberg's Favor.............................................................21

    B.    The Nature Of The Earnings Call Weighs In Bloomberg's Favor. ...........24

    C.    The Fact That Bloomberg "Copied" The Entirety Of The Earnings
Call Does Not Preclude A Fair Use Defense. ............................................25

    D.    The Effect Of Bloomberg's Use Of The Earnings Call Upon The
Value Of The Earnings Call Is, At Best, A Factual Question...................26

III.    SWATCH'S MOTION TO STRIKE BLOOMBERG'S AFFIRMATIVE
DEFENSES SHOULD BE DENIED IN ITS ENTIRETY...................................26

        1.    Bloomberg's First And Second Affirmative Defenses .................28

        2.    Bloomberg's Third Affirmative Defense.......................................28

3. Bloomberg's Fourth And Fifth Affirmative Defenses...................29

4. Bloomberg's Sixth Affirmative Defense .......................................29

5. Bloomberg's Seventh Affirmative Defense...................................30

6. Bloomberg's Eighth And Ninth Affirmative Defenses ................31

CONCLUSION...................................................................................................33

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                            **Page**

*Allen v. Scholastic Inc.*,
    739 F. Supp. 2d 642 (S.D.N.Y. 2011)..............................................................................14

*Allison v. Rite Aid Corp.*,
    No. 09-cv-06931, 2011 WL 435334 (S.D.N.Y. Sept. 26, 2011) .....................................32

*Bill* Graham *Archives v. Dorling Kindersley Ltd.*,
    448 F.3d 605 (2d Cir. 2006)....................................................................20, 24, 25, 26

*Bolanos v. Norwegian Cruise Lines Ltd.*,
    No. 01-civ-4182 (RMB), 2002 WL 1465907 (S.D.N.Y. July 9, 2002) ....................29, 30

*Calabrese v. CSC Holdings, Inc.*,
    No. CV 02-5171, 2006 WL 544394 (E.D.N.Y. Mar. 6, 2006) ...........................................7

*Campbell v. Acuff-Rose Music, Inc.*,
    510 U.S. 569 (1994)..................................................................................20, 21, 23, 25

*Cf. Barclays Capital Inc.  v. Theflyonthewall.com*,
    No. 10-cv-1372, 2011 U.S. App. LEXIS 12421 (2d Cir. June 20, 2011).........................13

*Cnty. Vanlines, Inc. v. Experian Info. Solutions, Inc.*,
    205 F.R.D. 148 (S.D.N.Y. 2002) .........................................................................26, 27, 28

*Deere & Co. v. MTD Prods., Inc.*,
    No. 00-civ-5936, 2001 WL 435613 (S.D.N.Y. April 30, 2001) .....................................30

*DiLaura v. Power Auth. of the State of N.Y.*,
    982 F.2d 73 (2d Cir. 1992)..............................................................................................7

*EBS Dealing Res., Inc. v. Intercontinental Exch., Inc.*,
    379 F. *Supp*. 2d. 521(S.D.N.Y. 2005)...........................................................................31

*Estate of Hemingway v. Random House, Inc.*,
    23 N.Y.2d 341, 244 N.E.2d 250, 296 N.Y.S.2d 771(1968).............................................11

*Falwell v. Penthouse Int'l., Ltd.*,
    521 F. Supp. 1204 (W.D. Va. 1981) ...............................................................................11

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991)..........................................................................................................9

*George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.*,
    554 F.2d 551 (2d Cir. 1977)..............................................................................................4

*Harper & Row Publishers, Inc. v. Nation Enter.*,
    *471* U.S. 539 (1985)......................................................................................................9

*Houston v. Manheim-New York*,
    No. 09-civ-4544, 2010 WL 744119 (S.D.N.Y. Mar. 3, 2010).......................27, 29, 31, 32

*Kelly v. Arriba Soft Corp.*,
    336 F.3d 811(9th Cir. 2003) ...................................................................................21, 25

*King v. Am. Airlines, Inc.*,
    284 F.3d 352 (2d Cir. 2002)........................................................................................4

*L.A. News Serv. v. KCAL-TV Channel 9*,
    108 F.3d 1119 (9th Cir. 1997) ....................................................................................20

*Latimore v. NBC Universal, Inc.*,
    No. 07-civ-9338, 2009 WL 1321901 (S.D.N.Y. May 11, 2009)................................5, 13

*Madrid v. Chronicle Books*,
    209 F. *Supp*. 2d 1227 (D. Wyo. 2002) ...........................................................................14

*Manus Sports Gloves, LLC v. Everlast Worldwide, Inc.*,
    759 F. Supp. 2d 459 (S.D.N.Y. 2010).............................................................................4

*Marshall v. Huffman IV*,
    No. C 10-1665, 2010 WL 5115418 (N.D. Cal. Dec. 9, 2010)...........................................9

*Martal Cosmetics, Ltd. v. Int'l. Beauty Exch. Inc.*,
    No. 01-cv-7595, 2010 WL 2179022 (E.D.N.Y. May 28, 2010).......................................30

*Matheison v. Assoc. Press*,
    No. 90 Civ. 6945, 1992 WL 164447 (S.D.N.Y. June 25, 1992)......................................24

*MCA, Inc. v. Wilson*,
    *677* F.2d 180 (2d Cir. 1981)........................................................................................24

*NBA v. Motorola, Inc.*,
    105 F.3d 841 (2d Cir. 1977).................................................................................15, 16

*Newport Elecs., Inc. v. Newport Corp.*,
    157 F. Supp. 2d 202 (D. Conn. 2001).............................................................................30

*NFL v. Rondor, Inc.*,
    840 F. Supp. 1160 (N.D. Ohio 1993) .............................................................................18

*Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.*,
    166 F.3d 65 (2d Cir. 1999)..........................................................................................12

*Nunez v. Caribbean Int'l. News Corp.*,
235 F.3d 18 (1st Cir. 2000)..................................................................21, 24, 25

*N.Y.C. Dep't. of Fin. v. Twin Rivers, Inc.*,
No. 95-cv-1389, 1997 WL 299423 (S.D.N.Y. June 5, 1997) ...............................7

*Oliner v. McBride's Indus., Inc.*,
106 F.R.D. 14 (S.D.N.Y. 1985) ..........................................................................29

*Oneida Indian Nation of N.Y. v. N.Y.*,
194 F. Supp. 2d 104 (N.D.N.Y. 2002) ...............................................................32

*Oppel v. Empire Mut. Ins. Co.*,
92 F.R.D. 494 (S.D.N.Y. 1981) ...........................................................................7

*Prod. Contractors, Inc. v. WGN Cont'l Broad., Co.*,
622 F. Supp. 1500 (N.D. Ill. 1985) .....................................................................15

*Salcer v. Envicon Equities Corp.*,
744 F.2d 935 (2d Cir. 1984)................................................................................27

*Salinger v. Colting*,
607 F.3d 68 (2d Cir. 1999)..................................................................................12

*Sarl Louis Feraud Int'l. v. Viewfinder, Inc.*,
489 F.3d 474 (2d Cir. 2007)................................................................................20

*Sellers v. M.C. Floor Crafters, Inc.*,
842 F.2d 639 (2d Cir. 1988) .................................................................................4

*In re September 11th Liability Insurance Coverage Cases*,
333 F. Supp. 2d 111, 115 (S.D.N.Y. 2004)........................................................4, 5

*Simon v. Mfrs. Hanover Trust Co.*,
849 F. Supp. 880 (S.D.N.Y. 1994)......................................................................27

*Smith v. George E. Muehlebach Brewing Co.*,
140 F. Supp. 729 (W.D. Mo. 1956) .....................................................................15

*Taggart v. WMAQ Channel 5 Chicago*,
No. 00-4205-GPM, 2000 WL 1923322 (S.D. Ill. Oct. 30, 2000) .......................10

*Trs. of the Bldg. Trades Educ. Benefit Fund v. Crana Elec., Inc.*,
No. 10-cv-2065, 2011 WL 4434190 (E.D.N.Y. Sept. 22, 2011) ..........................6

*Virgin Atl. Airways, Ltd. v. Nat. Mediation Bd.*,
956 F.2d 1245 (2d Cir. 1992)............................................................................7, 8

*Wainwright Sec. Inc. v. Wall St. Transcript, Corp.*,
    558 F.2d 91 (2d Cir. 1977)..................................................................12

*Wireless Ink Corp. v. Facebook, Inc.*,
    787 F. Supp. 2d 298 (S.D.N.Y. 2011)..................................................4

*In re World Trade Center Disaster Site Litigation*,
    456 F. Supp. 2d 520 (S.D.N.Y. 2006) .....................................5, 6, 13

**Statutes**

17 U.S.C. § 102(a) ..............................................................................10, 15

17 U.S.C. § 107 ..........................................................................................19

17 U.S.C. § 114(b) ......................................................................................9

17 U.S.C. § 411(a) ...............................................................................10, 11

17 U.S.C. § 411(c) .....................................................................................18

17 U.S.C. § 243.100 ...................................................................................22

17 U.S.C. § 243.100(a) ..............................................................................22

17 U.S.C. § 243.101(b) ..............................................................................22

17 U.S.C. § 504(b) .....................................................................................31

**Rules**

Fed. R. Civ. P. 8(c)(2)................................................................................32

Fed. R. Civ. P. 12(c) ...................................................................................4

Fed. R. Civ. P. 12(f) ..................................................................................26

**Other Authorities**

H.R. Rep. No. 94-1476 at 10 (1976),
    reprinted in 1976 U.S.C.C.A.N. at 5669, 1976 WL 14045............................16

1 *Nimmer on Copyright* § 2.10[A][2][b]......................................................16

SEC Release No. 7881,
    Selective Disclosure and Insider Trading, 73 SEC Docket 3 (Aug. 15, 2000)............22, 23

Bloomberg L.P. submits this memorandum of law in opposition to the Swatch Group Management Services Ltd.'s motions for (1) Judgment on the Pleadings and (2) an Order Striking Defendant's Affirmative Defenses.

## PRELIMINARY STATEMENT

Swatch's motions are premised on the incorrect assumption that, in denying Bloomberg's motion to dismiss, the Court decided the merits of Swatch's copyright claim in its favor, and that therefore the "law of the case" doctrine compels judgment for Swatch on its claim for copyright infringement, a dismissal of Bloomberg's counterclaims, and an order striking Bloomberg's affirmative defenses.  Swatch misreads the Court's previous decision; indeed, the Court explicitly stated that, in denying Bloomberg's motion to dismiss, it merely decided that Bloomberg should answer Swatch's complaint.  The Court has not yet decided -- and cannot decide absent a fully-developed factual record -- whether Swatch is entitled to the relief it seeks. Moreover, various aspects of Swatch's claim for copyright infringement fail as a matter of law. Given that Swatch's claim for copyright infringement requires factual inquiry and rests on legally-infirm arguments, Swatch is not entitled to judgment on the pleadings.

For the same reasons, Swatch's motion for judgment on the pleadings on Bloomberg's fair use defense is, at best, premature.  Indeed, in denying Bloomberg's motion to dismiss, the Court specifically declined to reach Bloomberg's fair use defense, concluding that the defense requires a fact-intensive inquiry that cannot be undertaken without discovery.   Upon development of the relevant facts -- including, Bloomberg respectfully submits, the fact that the purpose of Swatch's copyright claim is not to protect creative expression, but rather to prevent the disclosure of its financial information to the general investing public -- Bloomberg's fair use rights will become clear.

1

Swatch's motion to strike Bloomberg's other affirmative defenses should also be denied.  A party moving to strike an affirmative defense bears the exceptionally high legal burden of showing that there are no open issues of fact or law raised by the affirmative defense and that consideration of the affirmative defense would be prejudicial to the movant.  Despite that high bar, Swatch moves to strike all of Bloomberg's affirmative defenses with a back of the hand analysis.  Swatch's motion should be denied, as each affirmative defense stated by Bloomberg presents an open issue of fact or law, and none is prejudicial to Swatch.

### FACTS

Bloomberg is a worldwide leader in business and financial news reporting, and provides individuals and companies with access to financial information regarding many of the world's largest corporations.  (*See* Am. Answer (Bloomberg's Counterclaims) ¶ 10.)  Bloomberg is a vital news resource to investors, financial institutions, and the general public.  (*Id.*)

In February 2011, Swatch hosted an earnings call for a group of securities analysts (the "Earnings Call").  (*Id.* ¶ 11.)  Swatch used the Earnings Call to discuss with those analysts material information about its operations and financial results.  (*Id.* ¶¶ 12, 13, 18.)  During the Earnings Call, Swatch's executives made brief introductory remarks on those topics, followed by a question-and-answer session with analysts.  (*Id.* ¶ 13.)  Much of the Earnings Call was taken up by questions posed by the analysts (as to which Swatch does *not* claim copyright); the answers that Swatch's executives provided were unscripted and factual.  (*Id.* ¶¶ 14-15.)

Swatch alleges that Chorus Call SA, a third party, recorded the entire Earnings Call as it was in progress.  (Second Am. Compl. ¶¶ 11-12.)  Swatch does not seek to profit from the publication of a transcript of its Earnings Call or the sound recording thereof.  (*See* Pl. Am. Answer ¶ 20.)  Indeed, Bloomberg respectfully submits that the sole purpose of Swatch's "copyright" is to prevent, or greatly hinder, the dissemination of important financial news about

2

Swatch, and to allow Swatch to engage in selective disclosure of material information about its finances and operations.

At the request of an invited party, a third party transcript service made a sound recording of the live Earnings Call and prepared a written transcript of it.  The recording and the transcript were both subsequently provided to Bloomberg.  (*See* Am. Answer (Bloomberg's Counterclaims) ¶¶ 21-22.)  Thus, contrary to Swatch's pleadings, the sound recording was made lawfully, and Bloomberg engaged in no subterfuge whatsoever.  Bloomberg published to its readers the sound recording and the written transcript of the Earnings Call prepared by a third party transcript service, thereby broadly disseminating material and market-moving financial information regarding Swatch and its subsidiaries.  (*Id.* ¶¶ 18, 23.)  Swatch had previously allowed the publication of similar earnings calls and transcripts of calls by companies like Bloomberg, and Bloomberg relied on that conduct in deciding to publish the Earnings Call.  (*Id.* ¶¶ 25, 26.)

Swatch filed its complaint against Bloomberg for copyright infringement on February 14, 2011 (Docket No. 1), which complaint was amended on April 25, 2011 (the "Amended Complaint") (Docket No. 11) and again on May 10, 2011 (the "Second Amended Complaint") (Docket No. 15).  Bloomberg moved to dismiss the Second Amended Complaint on May 20, 2011, and the motion was denied by this Court's order dated August 30, 2011 (Docket No. 27) (the "Order").

After denying Bloomberg's motion, this Court conducted an Initial Case Management Conference.  Thereafter, on October 4, 2011, Bloomberg filed its First Amended Answer, Affirmative Defenses, and Counterclaims (the "Amended Answer") (Docket No. 29). The Amended Answer is the subject of Swatch's motions.  Swatch filed its Answer to

Defendant's First Amended Counterclaims ("Plaintiff's Answer") (Docket No. 32) on October 21, 2011.

## ARGUMENT

Rule 12(c) allows a party to move for judgment on the pleadings after they are closed.  Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings is considered under "the same standard as that applicable to a motion under Rule 12(b)(6) . . . ."  *Wireless Ink Corp. v. Facebook, Inc.*, 787 F. Supp. 2d 298, 305 (S.D.N.Y. 2011) (quoting *King v. Am. Airlines, Inc.*, 284 F.3d 352, 356 (2d Cir. 2002)).  Judgment on the pleadings is appropriate only "where material facts are undisputed *and* where a judgment on the merits is possible merely by considering the contents of the pleadings."  *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988) (emphasis added).  Thus, a party seeking judgment on the pleadings must therefore establish that there are *no* unresolved issues of material fact.  *Wireless Ink Corp.*, 787 F. Supp. 2d at 305; *see also George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.*, 554 F.2d 551, 553 (2d Cir. 1977) (reversing judgment on the pleadings on the grounds that "[a]ppellees dispute these allegations" and "where there is a dispute as to material facts judgment on the pleadings is inappropriate.") (internal citations omitted); *Manus Sports Gloves, LLC v. Everlast Worldwide, Inc.*, 759 F. Supp. 2d 459, 460 (S.D.N.Y. 2010) (denying plaintiffs' motion for judgment on the pleadings where the "claim will turn on the ordinarily fact-laden issue of intent.").

This Court has recognized that the existence of undeveloped factual issues compels the denial of motions for judgment on the pleadings.  For example, in *In re September 11th Liability Insurance Coverage Cases*, World Trade Center Properties LLC ("WTCP") and the Port Authority, a lessor of the World Trade Center properties, filed motions for judgment on the pleadings seeking a determination that the Port Authority was entitled to the status of an

"Additional Insured" on an insurance policy, which listed only WTCP as the "named insured," and a determination regarding the scope of coverage. 333 F. Supp. 2d 111, 115 (S.D.N.Y. 2004) (Hellerstein, J.) This Court denied the motions on the grounds that the insurance policy was ambiguous regarding the status of the Port Authority as an "Additional Insured," and a determination of the scope of such coverage was premature. *Id.* In doing so, it held that the motions failed "without evidence of the parties' communications to each other and evidentiary support regarding custom and [the insurer's] practice . . . ." *Id.* at 122; *see also Latimore v. NBC Universal, Inc.*, No. 07-civ-9338, 2009 WL 1321901, at *1 (S.D.N.Y. May 11, 2009) (Hellerstein, J.) (dismissing as premature Defendant NBC Universal's Rule 12(c) motion where Plaintiff had alleged copyrighted infringement of a television show proposal without alleging any copying by Defendant, on the grounds that the issues of access to the original materials and copying required discovery).

Similarly, in *In re World Trade Center Disaster Site Litigation*, the plaintiffs, workers who were involved in the restoration and removal work post-September 11, brought a number of claims against the city and state, seeking compensation for injuries sustained as a result of that work. 456 F. Supp. 2d 520, 520 (S.D.N.Y. 2006) (Hellerstein, J.) The defendants moved for judgment on the pleadings on the grounds that liability may not attach for actions taken in response to the September 11th attacks due to immunities under the New York State Defense Emergency Act, the New York State and Local Natural Disaster and Man-Made Disaster Preparedness Law, and New York common law. *Id.* at 546. In denying the motion for judgment on the pleadings, the Court noted that the immunities raised by the defendants required a factual analysis of their good faith. *Id.* at 555. In doing so, this Court noted that, "one has to

be cautious in considering a Rule 12(c) motion for judgment on the pleadings on the basis of a fact-laden defense." *Id.* at 556.

       Here, Swatch has moved for judgment on the pleadings based upon disputed factual allegations in its Second Amended Complaint, and in the face of defenses raised by Bloomberg that this Court has already concluded are fact-intensive and warrant discovery. Therefore, Swatch's motion for judgment on the pleadings should be denied. *See Trs. of the Bldg. Trades Educ. Benefit Fund v. Crana Elec., Inc.*, No. 10-cv-2065, 2011 WL 4434190, at *9 (E.D.N.Y. Sept. 22, 2011) (denying the plaintiffs' cross-motion for judgment on the pleadings and declining to convert the plaintiffs' cross-motion to a motion to dismiss for failure to state a claim in part because "defendant expects to uncover materials during discovery that would assist it in disputing, *inter alia*, the exact amount of delinquent contributions (if any) that it allegedly owes to plaintiffs.").

## I.    SWATCH IS NOT ENTITLED TO JUDGMENT ON THE PLEADINGS ON ITS COPYRIGHT INFRINGEMENT CLAIM

       Swatch's motion for judgment on the pleadings on its claim for copyright infringement should be denied because the claim rests on erroneous legal conclusions and on disputed issues of fact. Contrary to Swatch's characterization, the Court has not rendered any legal opinion on the claim for copyright infringement; therefore, the "law of the case" doctrine is inapplicable. Consequently, Swatch's motion for judgment on the pleadings should be denied.

### A.    The "Law of the Case" Doctrine Does Not Entitle Swatch To Judgment On The Pleadings.

       After denying Bloomberg's Motion to Dismiss Swatch's Second Amended Complaint (Docket No. 27), the Court conducted an Initial Case Management Conference. During that conference, the Court clarified that by denying the motion to dismiss, it had decided only that Bloomberg was required to answer Swatch's Second Amended Complaint. Swatch's

argument that the "law of the case" doctrine compels judgment in its favor is therefore misplaced.

The "law of the case" doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *DiLaura v. Power Auth. of the State of N.Y.*, 982 F.2d 73, 76 (2d Cir. 1992). "The law of the case doctrine, however, is limited to issues actually determined." *N.Y.C. Dep't. of Fin. v. Twin Rivers, Inc.*, No. 95-cv-1389, 1997 WL 299423, at *2 (S.D.N.Y. June 5, 1997).

Notably, the doctrine does not preclude a court from considering issues in subsequent proceedings that were previously raised in different contexts. *See e.g.*, *Calabrese v. CSC Holdings, Inc.*, No. CV 02-5171, 2006 WL 544394, at *3 (E.D.N.Y. Mar. 6, 2006) ("However, even if a court has previously examined a defense in the context of a motion to dismiss, its decision to let the case proceed does not preclude it from reconsidering the validity of the challenged defense by virtue of the 'law of the case' doctrine."); *Oppel v. Empire Mut. Ins. Co.*, 92 F.R.D. 494, 496 (S.D.N.Y. 1981) (the law of the case doctrine does not preclude the court from considering the plaintiff's motion to strike the defendants' affirmative defenses under the standard set forth pursuant to Rule 12(f), where the same affirmative defenses had been adjudicated by the court upon the defendants' motion to dismiss).

Finally, the "law of the case" doctrine is "admittedly discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment." *N.Y.C. Dep't. of Fin. v. Twin Rivers, Inc.*, 1997 WL 299423, at *1 (quoting *Virgin Atl. Airways, Ltd. v. Nat. Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

In its Order, the Court specifically declined to decide certain issues that go to the heart of Swatch's claim. *See e.g.*, Order at 6 n.8 ("I decline to decide, without further briefing

from the parties, whether the unauthorized transcript is an infringing derivative work."); *id.* at 9 ("Whether Bloomberg's use was a 'fair use' is not a determination I can make after reviewing only the pleadings, I decline to address such a fact-intensive issue before the parties have had an opportunity for discovery.").  Further, at the Initial Case Management Conference, the Court indicated that, by its Order, it had not decided any of the issues in the case beyond the fact that Swatch's allegations were sufficient to require an answer.  Therefore, the "law of the case" doctrine is inapplicable and does not entitle Swatch to judgment on the pleadings.

**B.     Various Aspects Of Swatch's Copyright Infringement Claim Fail As A Matter of Law.**

Swatch's copyright infringement claim extends to both the sound recording of the Earnings Call, and the written transcript of the call.  There can be no reasonable dispute that Swatch's claim far exceeds what the Copyright Act allows.

**1.     Bloomberg's Written Transcript Of The Earnings Call Is Not An Infringing Derivative Work.**

Swatch claims a copyright in the "sound recording of [its] executives' spoken performances during the Earnings Call (the 'Work')."  (Second Am. Compl. ¶ 15.)  Thus, it does not claim a copyright in the questions posed throughout the call.  It also does not claim a copyright in any written transcript of the Earnings Call.  It does, however, claim that Bloomberg's transcription of the call created "an unauthorized copy and/or unauthorized derivative work of the Work."  (*Id.* ¶ 23.)  This aspect of Swatch's claim fails as a matter of law.

The scope of a copyright owner's exclusive rights in a sound recording under Section 106 of the Copyright Act is expressly limited by Section 114(b), which provides:

> The exclusive right of the owner of copyright in a sound recording under clause (2) of section 106 is limited to the right to prepare a *derivative work in which the actual sounds fixed in the sound recording* are rearranged, remixed, or otherwise altered in sequence or quality.

17 U.S.C. § 114(b) (emphasis added).  Thus, Swatch's claim regarding the transcript of the call

rests on its ability to show that Bloomberg prepared a work rearranging, remixing or altering the

"actual sounds" fixed in the Earnings Call.  *See generally Marshall v. Huffman IV,* No. C 10-

1665, 2010 WL 5115418, at *4 (N.D. Cal. Dec. 9, 2010).  Swatch does not and cannot allege that

Bloomberg's written transcript contains any "actual sounds" from the sound recording.

Therefore, as a matter of law, Bloomberg's written transcript cannot be a derivative work of the

Earnings Call.  For that reason alone, Swatch's copyright infringement claim regarding the

written transcript fails.

> **2.      Swatch Is Not Entitled To Copyright Protection For Factual Material Disclosed During The Call, Or For Unauthored, Spontaneous Responses To Analysts' Questions.**

"That there can be no valid copyright in facts is universally understood.  The most

fundamental axiom of copyright law is that '[n]o author may copyright his ideas *or the facts he*

*narrates.*'"  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 344-45 (1991) (quoting

*Harper & Row Publishers, Inc. v. Nation Enter.*, 471 U.S. 539, 556 (1985) (emphasis added)).

That is because, in order to qualify for copyright protection, a work must be original to an author.

*Feist*, 499 U.S. at 340.  However, "[n]o one may claim originality as to facts.  This is because

facts do not owe their origin to an act of authorship."  *Id.* at 347 (internal citations omitted).

Rather, "all facts-scientific, historical, biographical, and news of the day . . . . may not be

copyrighted and are part of the public domain available to every person."  *Id.* at 348 (internal

citations omitted).

Much of Swatch's Earnings Call consisted only of financial facts and "news of

the day" related to the company.  Specifically, the Earnings Call consisted of a summary of the

company's financial results and projections and a question-and-answer session between Swatch's

executives and securities analysts regarding those results and projections.  Indeed, the Court has

recognized that the Earnings Call consisted of facts narrated by Swatch's executives.  *See* Order

at 5 ("It is true that Swatch Group's senior executives relied upon unprotected facts and figures

in responding to analysts' questions.").  To the extent the Swatch executives were merely

reciting facts, their statements lack the creativity necessary for copyright protection.

Further, to the extent that the Swatch executives were merely  answering the

questions posed by analysts with spontaneous, unauthored "utterances," such responses are not

entitled to copyright protection.  As discussed in detail below, utterances made during an

interview are not an "expression" for the purposes of copyright law.

*Taggart v. WMAQ Channel 5 Chicago*, is instructive.  There, the plaintiff alleged

infringement under the Copyright Act on the grounds that he was the sole owner of a videotaped

interview that he gave to a television station, which was subsequently broadcast without his

permission.  *See Taggart v. WMAQ Channel 5 Chicago*, No. 00-4205-GPM, 2000 WL 1923322,

at *3 (S.D. Ill. Oct. 30, 2000).  While the court dismissed the claim because of the plaintiff's

failure to register a copyright claim under 17 U.S.C. § 411(a) as a condition precedent to stating

a claim for copyright infringement, the court held that even if the plaintiff amended the

complaint to cure the defect, he would still fail to state a claim upon which relief can be granted:

> Plaintiff's claim does not fail for falling short of being a tangible
> form, the videotape of the interview is fixed in a tangible medium
> of expression as required by 17 U.S.C. § 102(a).  Yet Plaintiff's
> claim fails because the utterances made during an interview are not
> an expression of idea for the purpose of copyright law, they are
> simply an idea, and thus not subject to copyright protection.

*Id.* at 4.  The court further distinguished between the scripted questions (which were

copyrightable) and the spontaneous answers to them (which were not), reasoning that

"[a]lthough the Defendant interviewer likely contemplated his questions before asking them of

the Plaintiff, Plaintiff's comments during the interview were unprepared and spontaneous responses.  The interaction that was recorded on video proceeded . . . in a question and answer format . . . .With such format, there is no ability to partition the thoughts and expressions on the subjects discussed which would assist in identifying Plaintiff's averred copyrighted material." *Id.* at 5.  The answers given by Swatch's executives during the Earnings Call are no different.

Similarly, in dismissing a common law copyright claim with respect to an interview given by a plaintiff to a magazine, a District Court in Virginia noted that:

> However different or unique plaintiff's thoughts or opinions may be, the expression of those opinions or thoughts is too general and abstract to rise to the level of a literary or intellectual creation that may enjoy the protection of copyright.  Although the general subject matter of the interview may have been outlined in the reporters' minds prior to their meeting with plaintiff, the actual dialogue, including the unprepared responses of plaintiff, was spontaneous and proceeded in a question and answer format. There is no defined segregation, either by design or by implication of any of plaintiff's expressions of his thoughts and opinions on the subjects discussed which would aid in identifying plaintiff's purported copyrighted material.

*Falwell v. Penthouse Int'l., Ltd.*, 521 F. Supp. 1204, 1208 (W.D. Va. 1981); *see also Estate of Hemingway v. Random House, Inc.*, 23 N.Y.2d 341, 346, 244 N.E.2d 250, 253-54, 296 N.Y.S.2d 771, 776 (1968) (denying a claim of common law copyright ownership of interviews between Hemingway and a biographer planning to publish a work based on those interviews).

The fact that *Taggart* was dismissed because of the plaintiff's failure to register a copyright claim is not dispositive.  Neither is the fact that *Falwell* and *Estate of Hemingway* raised claims of common law copyright infringement, rather than federal copyright infringement. The holdings of *Falwell* and *Estate of Hemingway* are as valuable and relevant as decisions rendered pursuant to the Copyright Act, since those courts considered factual scenarios that are similar to the Earnings Call at issue in this case.

Nor is analysis in this case controlled by *Wainwright Securities Inc. v. Wall Street Transcript, Corp.* or *Nihon Keizai Shimbun, Inc. v. Comline Business Data, Inc.*, as the underlying works in those cases were written works of authorship that differed significantly from the content at issue here.  In *Wainwright*, the Second Circuit affirmed the District Court's order enjoining the defendants from publishing abstracts of the plaintiff's financial research reports, where each report examined "a company's financial characteristics, trends in an industry, major developments at a company, growth prospects, and profit expectations, and highlight[ed] both corporate strengths and weaknesses."  *Wainwright Sec. Inc. v. Wall St. Transcript, Corp.*, 558 F.2d 91, 93 (2d Cir. 1977) *abrogated on other grounds by Salinger v. Colting*, 607 F.3d 68 (2d Cir. 1999).  Further, "[t]he analyst's conclusions and predictions were a major feature of [each] report."  *Id.*  The research reports at issue in *Wainwright* were drafted over a period of months, and unlike the interview answers at issue in this case, were not merely reporting facts in response to questions posed by analysts; rather the authors of the research reports analyzed the underlying financial information from each company and exercised their discretion in deciding which facts to use in forming conclusions, which were written works of authorship.  *Id.*  Similarly, in *Nihon*, the copyrighted works at issue were newspaper articles consisting of compilations of facts, and each article was composed of an original structure, organization, chronological and substantive grouping of facts, and conclusions inferred from the facts.  *Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.*, 166 F.3d 65, 70-71 (2d Cir. 1999).

The underlying works at issue in *Wainwright* and *Nihon* were reports and analyses of the news, rather than the news itself, as is true in this case.  Such reports and analyses, unlike the executives' unscripted answers during the Earnings Call, are works of authorship, which necessarily involve the authors' discretion regarding the content that is included in the written

work product and the manner in which that content is presented.  The copyright law does not

protect entities that "make the news" as it protects organizations that report on or analyze the

news.  *Cf. Barclays Capital Inc.  v. Theflyonthewall.com*, No. 10-cv-1372, 2011 U.S. App.

LEXIS 12421, at *91-92 (2d Cir. June 20, 2011) (rejecting a "hot news" claim, the court held

that "a Firm's ability to make the news – by issuing a Recommendation that is likely to affect the

market price of a security – does not give rise to a right for it to control who breaks that news

and how.").  Given that important distinction, *Wainwright* and *Nihon* are significantly less

instructive than the cases involving unscripted responses to questions posed in the context of a

live interview.

   In short, Swatch is not entitled to copyright protection for those aspects of the

Earnings Call that are purely factual recitations or unauthored, spontaneous responses to

analysts' questions.  Therefore, Swatch's motion for judgment on the pleadings on its copyright

infringement claim -- which extends to all aspects of its executives' statements during the

Earnings Call in their entirety -- should be denied on this ground alone.

  **C.**  **Swatch Is Not Entitled To Judgment On The Pleadings On The Remaining Aspects Of Its Copyright Infringement Claim Given Unresolved Factual Disputes Regarding The Extent To Which There Is Any Creativity In The Call.**

   Judgment on the pleadings is inappropriate in the face of open issues of fact.  *See*

*Latimore*, 2009 WL 1321901, at *1 (dismissing as premature Defendant's Rule 12(c) motion,

where the motion raised issues requiring discovery); *In re World Trade Ctr. Disaster Site Litig.*,

456 F. Supp. 2d at 555 (denying a Rule 12(c) motion on the grounds that there were open issues

of fact).  Here, Swatch's copyright claim requires it to show some modicum of creativity in the

executives' performances or in the manner in which the Earnings Call was recorded.  Bloomberg

respectfully submits that the pleadings themselves make clear that there is no such creativity.  In

any event, the most that Swatch can plausibly suggest is that there are unresolved factual issues regarding the extent of creativity or authorship involved.  Either way, Swatch is not entitled to judgment on the pleadings.

       **1.**       **Bloomberg Strongly Disputes The Extent To Which The Executives' Performances Reflect Any Authorship Or Creativity.**

      Given that Swatch does not claim copyright in the questions posed, and cannot claim copyright in factual recitations on or in spontaneous responses to questions, it is unclear what aspects of the Earnings Call are, in Swatch's view, creative.  Bloomberg vigorously disputes Swatch's contention that the Earnings Call reflected any creativity whatsoever; it is Bloomberg's contention that all of the answers given on the Earnings Call were spontaneous recitations of fact lacking artistic content.  (*See* Am. Answer (Bloomberg's Counterclaims) ¶¶ 14-16.)  Therefore, there is an issue of fact regarding the content of the Earnings Call with respect to Swatch's executives' preparation for the Earnings Call, which will be determinative of whether the answers given during the call were spontaneous recitations of news or ideas, as opposed to prepared statements.

      The tone and pace of the executives' delivery of the news do not salvage Swatch's copyright claim.  Rather, tone and pace are common elements of a work that do not contribute to originality and thus are not entitled to copyright protection.  *See Allen v. Scholastic Inc.*, 739 F. Supp. 2d 642, 664 (S.D.N.Y. 2011) ("To the extent that Plaintiff's [work] even contains tone or pace—for example, the excitement, innocence, or the simplicity of a moment—these elements are certainly not original, but are common to many pieces of children's literary works.") (internal quotations omitted); *Madrid v. Chronicle Books,* 209 F. Supp. 2d 1227, 1241 (D. Wyo. 2002) ("Similarly, although tone and pace can be original expressions and subject to copyright protection, Plaintiff's claims of infringement on this basis must also fail.  To the extent that

Plaintiff's poem even contains 'tone' or 'pace' . . . these elements are certainly not original, but are common to many pieces of children's literary works."); *see generally Smith v. George E. Muehlebach Brewing Co.*, 140 F. Supp. 729, 731 (W.D. Mo. 1956) ("Originality . . . means that the material added to what is in the public domain, must have aspects of novelty and be something more than a trivial addition or variation.") (internal quotations omitted).

Accordingly, Bloomberg respectfully submits that the Court erred in suggesting that the Earnings Call becomes copyrightable due to Swatch's executives' tone, pronunciation or pace in delivering the answers on the call. *See* Order at 5-6 ("At a more basic level, the senior executives' unique pronunciation of words and their inflection and tone of voice, taken together, constitute 'something irreducible, which is one man's alone,' and that 'he may copyright'–at least in the form of a sound recording.").

### 2.    Bloomberg Strongly Disputes Swatch's Claim That The Manner In Which The Call Was Recorded Reflects Any Creativity.

There are also serious questions of fact regarding the extent to which Swatch's method of recording the Earnings Call reflects any creativity whatsoever. And without such creativity, there is no copyright claim for the sound recording of the Earnings Call. "Copyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression . . . ." 17 U.S.C. § 102(a). As a general matter, live events are not authored, and therefore are not considered works of authorship falling within the ambit of Section 102(a). *See Prod. Contractors, Inc. v. WGN Cont'l Broad., Co.*, 622 F. Supp. 1500, 1503 (N.D. Ill. 1985) (dismissing the case on summary judgment on the grounds that a live parade contained no original creative authorship and thus was not a work of authorship entitled to copyright protection); *NBA v. Motorola, Inc.*, 105 F.3d 841, 847 (2d Cir. 1977) ("[R]ecorded broadcasts of

15

NBA games—as opposed to the [live] games themselves—are . . . entitled to copyright protection.").

Copyright protection does not extend to a live event where the manner of recording lacked artistic creativity, because "purely mechanical" fixations of sound are outside the scope of the Copyright Act.  *See* H.R. Rep. No. 94-1476 at 10 (1976), reprinted in 1976 U.S.C.C.A.N. at 5669, 1976 WL 14045 ("Aside from cases in which sounds are fixed by some purely mechanical means without originality of any kind, the copyright protection that would prevent the reproduction and distribution of unauthorized phonorecords of sound recordings is clearly justified."); *see also* 1 *Nimmer on Copyright* § 2.10[A][2][b] (explaining that "if a sound recording is a simple direct recording, involving neither compilation nor editing of sounds, nor any electronic processing more complex that simply pressing a 'start' button on a tape recorder," it is not entitled to copyright protection).[1]

Here, a fully-developed factual record will make clear that the sound recording of the Earnings Call was purely mechanical, and that Swatch did not employ any artistic creativity in recording the Earnings Call.  Rather, it hired a third party to record the call from start to finish. (Am. Compl. ¶¶ 11-12.)  Swatch does not allege that any editorial selection was made of what would be recorded or the manner in which it would be recorded.  Swatch does allege that the

---

[1]      Congress and the courts have recognized the copyright protection accorded to recordings of live events, as distinct from such protection for the underlying event.  *See NBA*, 105 F.3d at 847 ("Congress found it necessary to extend such protection to recorded broadcasts of live events.  The fact that Congress did not extend such protection to the events themselves confirms our view that the district court correctly held that appellants were not infringing a copyright in the NBA games."); *see also* H.R. Rep. No. 94-1476 at 10 ("The copyrightable elements in a sound recording will usually, though not always involve 'authorship' both on the part of the performers whose performance is captured and on the part of the record producer responsible for setting up the recording session, capturing and electronically processing the sounds, and compiling and editing them to make the sound recording. There may, however, be cases where the record producer's contribution is so minimal that the performance is the only copyrightable element in the work, and there may be cases (for example, recordings of birdcalls, sounds of racing cards, et cetera) where only the record producer's contribution is copyrightable."); H.R. No. 94–1476 at 7 ("When a football game is being covered by four television cameras, with a director guiding the activities of the four cameramen and choosing which of their electronic images are sent out to the public and in what order, there is little doubt that what the cameramen and the director are doing constitutes authorship.").

third party, which recorded the call, added or deleted any background sounds or employed any recording controls, let alone any sounds or controls that could be deemed creative.  Rather, it would appear -- and discovery will confirm -- that the company that recorded the call merely pressed the start button at the beginning of the call.  Contrary to Swatch's assertions, the mere deletion of 28 seconds of opening call instructions, which were only applicable to those listening to the live call and would have been irrelevant and confusing to subsequent listeners of the taped call, does not render the sound recording "creative."

Given that the Earnings Call is a sound recording of a live event, which is merely a narration of facts in response to questions posed by analysts that was recorded in a purely mechanical manner, Swatch is not entitled to copyright protection for the sound recording.  To the extent that Swatch disputes the manner of recording, it will be necessary to undertake a factual inquiry regarding, among other things, the instructions that Swatch provided to the company that recorded the call, the manner in which the Earnings Call was recorded, the reasons why 28 seconds of call instructions were deleted, and whether Swatch instructed the recording company to delete that section.  Such issues of fact cannot be decided on the pleadings and are fatal to Swatch's motion for judgment on them.

**D.  Swatch Did Not Comply With The 48 Hour Notice Requirement Set Forth In Section 411(c) Of The Copyright Act.**

Swatch's claim for copyright infringement fails for the additional reason that Swatch did not comply with the notice requirement set forth in Section 411(c) of the Copyright Act.  Swatch was required to comply with the Section 411(c) notice requirement, irrespective of its compliance with the registration requirements in Section 411(a), based on the plain reading of the statute.  Section 411(c) of the Copyright Act provides:

> In the case of a work consisting of sounds, images, or both, the
> first fixation of which is made simultaneously with its

17

> transmission, the copyright owner may, either before or after such
> fixation takes place, institute an action for infringement . . .
> if . . .the copyright owner (1) serves notice upon the infringer, not
> less than 48 hours before such fixation, identifying the work and
> the specific time and source of its first transmission, and declaring
> an intention to secure copyright in the work; *and* (2) makes
> registration for the work, if required by subsection [411](a), within
> three months after its first transmission.

17 U.S.C. § 411(c) (emphasis added).  The fact that Swatch registered its copyright within three

months after the transmission of the Earnings Call does not alter the fact that Swatch provided no

notice to Bloomberg forty-eight (48) hours prior to the transmission of the Earnings Call

regarding the time and source of the broadcast and regarding its intent to register the Earnings

Call as a copyrighted work.  The notice and registration requirements in Section 411(c) are not

set forth in the disjunctive.

Notice was required under Section 411(c) and was particularly necessary, given

that Bloomberg could not otherwise have ascertained Swatch's intent to copyright a call

consisting of a live recitation of facts in response to a series of questions.  The practicality of the

notice requirement is of no particular significance.  *See* Order at 7 ("As a practical matter,

because Swatch Group did not invite Bloomberg to participate in the conference call, but rather

Bloomberg accessed the call surreptitiously and without authorization or consent, there is no way

Swatch Group could have known to serve notice on Bloomberg forty-eight hours before the call

with scheduled to take place.").  Notice is required to apprise potential infringers of the

possibility of liability.  *See e.g.*, *NFL v. Rondor, Inc.*, 840 F. Supp. 1160, 1166 (N.D. Ohio 1993)

(finding that notice requirements had been met where, "'Advance Notice of Potential

Infringement' letters advised defendants of [the NFL's] ownership of copyright in the telecast of

[two] game[s] . . . . [and] warned each defendant that should it 'intercept and/or receive

18

transmissions of . . . games not locally broadcast . . . the NFL will take appropriate legal action . . .'").

Swatch claims that it was unable to foresee Bloomberg's publication of the Earnings Call.  (*See* Swatch's Opp. to Bloomberg's Mot. to Dismiss at 27.)  Under the plain reading of Section 411(c), the notice requirement is not waived or altered due to any practical difficulties of providing notice.  At best, Swatch's argument raises factual issues that are not yet ripe for adjudication.  For example, Bloomberg has alleged that news reporting organizations have previously reported on Swatch's earnings calls.  (Am. Answer (Bloomberg's Counterclaims) ¶¶ 25-26.)  Thus, Swatch should have foreseen Bloomberg's reporting of the Earnings Call and could have easily provided notice to Bloomberg in advance of the call.  At the very least, there is a factual issue regarding Swatch's alleged inability to provide notice.

## II.   SWATCH IS NOT ENTITLED TO JUDGMENT ON THE PLEADINGS ON BLOOMBERG'S COUNTERCLAIM FOR FAIR USE

Swatch is not entitled to judgment on the pleadings dismissing Bloomberg's counterclaim.  Indeed, the Court specifically declined to decide the issue of fair use on Bloomberg's motion to dismiss due to the factual nature of the inquiry required.  *See* Order at 9 ("Whether Bloomberg's use was a 'fair use' is not a determination I can make after reviewing only the pleadings, I decline to address such a fact-intensive issue before the parties have had an opportunity for discovery.").

Section 107 of the Copyright Act specifically provides that the use of copyrighted works for certain enumerated purposes, including news reporting, may be fair use.  *See* 17 U.S.C. § 107 ("[T]he fair use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching . . . scholarship, or research, is not an infringement of copyright.").  Thus, the use of copyrighted material in news reporting weighs in favor of fair use.  *See*

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578-79 (1994) ("The enquiry here may be guided by the examples given in the preamble to § 107, looking to whether the use is for criticism, or comment, or news reporting, and the like . . . ."); *L.A. News Serv. v. KCAL-TV Channel 9*, 108 F.3d 1119, 1121 (9th Cir. 1997) (the fact that the defendant television station used a copyrighted videotape in the context of news reporting weighs in favor of fair use given that "§ 107 itself gives news reporting as an example . . . ").

"Whether . . . fair use exists involves a case-by-case determination using four non-exclusive, statutorily provided factors in light of the purposes of copyright.  The factors are: (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." *See Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 608 (2d Cir. 2006).

In many respects the pleadings themselves reveal that these factors all weigh in Bloomberg's favor; Swatch would only be able to overcome Bloomberg's fair use defense in the highly unlikely event that it could make a factual showing regarding a level of creativity, Bloomberg's non-news use, and competitive impact that would bear no resemblance to the pleadings.

The fair use doctrine "balances the competing interests of copyright laws and the First Amendment . . . ."  *Sarl Louis Feraud Int'l. v. Viewfinder, Inc.*, 489 F.3d 474, 482 (2d Cir. 2007) ("With regard to the protections provided by the First Amendment for the unauthorized use of copyrighted material, this court has held that absent extraordinary circumstances, the fair use doctrine encompasses all claims of first amendment in the copyright field.") (internal quotations omitted).  Given the manifest First Amendment interest in the dissemination of the

Earnings Call as news, the other factors would have to weigh heavily in Swatch's favor to

overcome Bloomberg's fair use defense.  As discussed next, they do not come close.

> **A.**  **The Purpose And Character Of Bloomberg's Use Of The Earnings Call**
> **Weigh In Bloomberg's Favor.**

The first fair use factor looks to "the purpose and character of [Bloomberg's] use

[of the Earnings Call], including whether such use is of a commercial nature . . . ."  *Campbell*,

510 U.S. at 578.  In assessing this factor, the Court should consider the First Amendment interest

in the dissemination of news, as well as policy considerations regarding the fair and equal

disclosure of material financial information.

The courts have recognized that using a work to inform the public weighs in favor

of fair use.  *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 819 (9th Cir. 2003) (finding there was fair

use of copyrighted images on a search engine, as "[t]his case involves more than merely a

retransmission of [Plaintiff's] images in a different medium.  [Defendant's] use of the images

serves a different function than [Plaintiff's] use – improving access to information on the internet

versus artistic expression."); *Nunez v. Caribbean Int'l. News Corp.*, 235 F.3d 18, 23 (1st Cir.

2000) ("However, the informative nature of the use, appellee's good faith, and the fact that it

would have been difficult to report the news without reprinting the photograph suggest that on a

whole, this factor is either neutral or favors a finding of fair use.").

Further, in deciding whether the purpose and character of the use of the work at

issue weighs in favor of a finding of fair use, courts have considered the good faith of the party

that made use of the work.  *See Nunez*, 235 F.3d at 23 ("Appellee's good faith also weighs in its

favor on this [purpose and character] prong of the fair use test.").  Viewed in the light most

favorable to Swatch, the reasons that Bloomberg disseminated the Earnings Call and its good

faith in doing so are questions of fact, and cannot be resolved against Bloomberg on Swatch's

motion for judgment on the pleadings.

In considering the purpose of Bloomberg's use, the Court should also evaluate the

public policy regarding the need for widespread dissemination of material information on public

companies, as reflected in Regulation FD, 17 U.S.C. § 243.100 ("Reg FD").  That regulation,

which governs the selective disclosure of information, provides:

> Whenever an issuer, or any person acting on its behalf, discloses
> any material nonpublic information regarding that issuer or its
> securities . . . the issuer shall make public disclosure of that
> information . . . (1) Simultaneously, in the case of an intentional
> disclosure . . . .

17 U.S.C. § 243.100(a).  Reg FD was adopted as the SEC became "increasingly concerned about

the selective disclosure of material information by issuers.  As reflected in recent publicized

reports, many issuers are disclosing important nonpublic information, such as advance warnings

of earnings results, to securities analysts or selected institutional investors or both, before making

full disclosure of the same information to the general public.  Where this has happened, those

who were privy to the information beforehand were able to make a profit or avoid a loss at the

expense of those kept in the dark."  SEC Release No. 7881, Selective Disclosure and Insider

Trading, 73 SEC Docket 3 (Aug. 15, 2000).  This is exactly the situation here, as Swatch

disclosed material financial information and projections to selected securities analysts and is now

trying to use the Copyright Act to prevent dissemination to the market as a whole.

While Reg FD exempts foreign issuers of securities (*see* 17 U.S.C. § 243.101(b)),

that does not eliminate its policy considerations from the fair use analysis.  Indeed, the SEC has

expressed its concern regarding selective disclosure by foreign issuers:

> Proposed Regulation FD . . . would have applied to foreign private
> issuers. However, the Commission has determined to exempt

22

> foreign private issuers at this time as it has in the past exempted them from certain U.S. reporting requirements such as Forms 10-Q and 8-K.  Today's global markets pose new regulatory issues.  In recognition of this fact, the Commission will be undertaking a comprehensive review of the reporting requirements of foreign private issuers.  In the interim, we remind foreign private issuers of their obligations to make timely disclosure of material information pursuant to applicable SRO [self-regulatory organization] rules and policies, and our expectation that the markets will enforce these obligations.  Also, while Regulation FD will not apply, foreign issuers in their disclosure practices remain subject to liability for conduct that violates, and meets the jurisdictional requirements of, the antifraud provisions of the federal securities laws.

SEC Release No. 7881 at 17.

Here, American investors trade in Swatch American Depositary Receipts ("ADRs") over U.S. exchanges.  *See* www.adrbnymellon.com/dr_profile.jsp?cusip=870123106.  Those investors are entitled to access to the same material information that Swatch's favored analysts received, and Bloomberg discharges its role as the "eyes and ears of the public" in providing that access.

That Bloomberg is a "for profit" news service does not require a finding that the purpose and character of Bloomberg's use of the Earnings Call was outside the ambit of fair use.  Indeed, the Supreme Court has recognized that the fair use doctrine protects the First Amendment rights of profit-making news organizations to report on matters of public interest and concern:

> If, indeed, commerciality carried presumptive force against a finding of fairness, the presumption would swallow nearly all of the illustrative uses listed in the preamble paragraph of § 107, including news reporting . . . since these activities are generally conducted for profit in this country.  Congress could not have intended such a rule . . . .

*Campbell*, 510 U.S. at 584.  Bloomberg respectfully submits that the purpose and character of its use of the Earnings Call weighs heavily in favor of fair use.

**B.     The Nature Of The Earnings Call Weighs In Bloomberg's Favor.**

In order to determine whether Bloomberg's use of the Earnings Call was fair use, the Court must also assess the nature of the Earnings Call.  "Courts have generally considered two aspects of the work in evaluating this factor:  first the extent to which it is a creative work enjoying broader copyright protections as opposed to a factual work requiring broader dissemination, and second, whether it is unpublished, in which case the right of first publication is implicated."  *Nunez*, 235 F.3d at 23 (internal citations omitted).  The Second Circuit has held that "[t]o resolve this inquiry [of the nature of the copyrighted work] the court considers the protection of the reasonable expectations of one who engages in the kinds of creation/authorship that the copyright seeks to encourage."  *Bill Graham Archives*,  448 F.3d at 612.

As discussed above, the Earnings Call is a factual work that, consistent with Reg FD,  requires broad dissemination.  Its creative elements are, even under Swatch's view, thin at best.  And the threshold for creativity in the fair use context is significantly higher than it is in the copyright infringement context.  *See Matheison v. Assoc. Press*, No. 90 Civ. 6945, 1992 WL 164447, at *6 (S.D.N.Y. June 25, 1992) ("In making the determination as to a work's non-factual or creative component, the threshold is not so low as the 'originality' standard for copyrightability . . . *i.e.* the 'minimal creative spark' requirement . . . rather, for the second factor in the fair use analysis to weigh in favor of the creator, the work must be 'creative, imaginative, and original.'") (quoting *MCA, Inc. v. Wilson*, 677 F.2d 180, 182 (2d Cir. 1981)).

There are also serious factual questions regarding Swatch's expectations and motivations in seeking copyright protection.  Bloomberg respectfully submits that discovery will reveal that Swatch has no interest in protecting any creative element regarding the Earnings Call, and instead seeks to prevent widespread dissemination of information to investors.  This too would weigh in Bloomberg's favor in the fair use analysis. *See Nunez*, 235 F.3d at 23-24.

24

### C.      The Fact That Bloomberg "Copied" The Entirety Of The Earnings Call Does Not Preclude A Fair Use Defense.

The courts have recognized that "copying [of an entire work] does not necessarily weigh against fair use because copying the entirety of a work is sometimes necessary to make a fair use of the image." *Bill Graham Archives*,  448 F.3d at 613 (copying posters in their entirety did not weigh against fair use).  Rather, in a fair use analysis, "the extent of permissible copying varies with the purpose and character of the use." *Id.* (quoting *Campbell*, 510 U.S. at 586-87); *see also Kelly*, 336 F.3d at 821 (finding there was fair use although Defendant "did copy each of [Plaintiff's] images as a whole, it was reasonable to do so in light of [Plaintiff's] use of the images.  It was necessary for [Defendant] to copy the entire image to allow users to recognize the image and decide whether to pursue more information about the image or the originating web site.  If [Defendant] only copied part of the image, it would be more difficult to identify it, thereby reducing the usefulness of the visual search engine."); *Nunez*, 235 F.3d at 24 ("The inquiry must focus upon whether the extent of copying is consistent with or more than necessary to further the purpose and character of the use.  In this case [Defendant] admittedly copied the entire picture; however, to copy any less than that would have made the picture useless to the story.") (internal quotations omitted).

Here, the purpose of Bloomberg's recording and dissemination of the Earnings Call was to provide all financial information concerning Swatch to the markets so that investors could assess for themselves the significance of Swatch's disclosures.  In fact, if Bloomberg had paraphrased the call or made some other editorial selection, it would be a disservice to the public, Bloomberg's readers, and potentially to Swatch.  For example, if there was a nuance to an answer provided by Swatch that was lost in the editorial process, this may adversely affect Swatch and deprive investors of necessary information to evaluate Swatch's financial

information.  The selective disclosure of parts of the Earnings Call is not sufficient to allow

investors the opportunity to evaluate Swatch's financial disclosures.

> ### D. The Effect Of Bloomberg's Use Of The Earnings Call Upon The Value Of The Earnings Call Is, At Best, A Factual Question.

The fourth fair use factor is "the effect of the use upon the potential market for or

value of the copyrighted work."  In considering this factor, the Court should look to "the market

harm caused by the particular infringement," and  "whether, if the challenged use becomes

widespread, it will adversely affect the potential market for the copyrighted work.  This analysis

requires a balancing of the benefit the public will derive if the use is permitted and the personal

gain the copyright owner will receive if the use is denied."  *Bill Graham Archives*,  448 F.3d at

613.

Bloomberg is confident that this factor also weighs heavily in its favor, since

Swatch does not -- and cannot -- allege any such effect.  Swatch's pleadings have set forth no

facts suggesting that there is any market for the Earnings Call, much less suggesting any market

harm caused by Bloomberg's dissemination of the Earnings Call.  The most Swatch can do is try

to argue that this factor raises questions of fact.  In any event, there is no plausible construction

of the pleadings that would suggest that this factor leans in Swatch's favor, and Bloomberg

respectfully submits that discovery will make clear that its reporting caused no "market harm" to

Swatch.

## III. SWATCH'S MOTION TO STRIKE BLOOMBERG'S AFFIRMATIVE DEFENSES SHOULD BE DENIED IN ITS ENTIRETY

Swatch's motion to strike Bloomberg's affirmative defenses under Rule 12(f)

should be denied in its entirety.  Rule 12(f) provides that "[t]he court may strike from a pleading

an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R.

Civ. P. 12(f).  Such motions to strike are disfavored.  *Cnty. Vanlines, Inc. v. Experian Info.*

*Solutions, Inc.*, 205 F.R.D. 148, 152 (S.D.N.Y. 2002); *Houston v. Manheim-New York*, No. 09-civ-4544, 2010 WL 744119, at *2 (S.D.N.Y. Mar. 3, 2010) ("[M]otions to strike are generally disfavored and will not be granted unless the matter asserted clearly has no bearing on the issue in dispute.") (internal quotations omitted).

In order to prevail on a motion to strike, the plaintiff must show that "(1) there is no question of fact which might allow the defense to succeed; (2) there is no question of law which might allow the defense to succeed; and (3) the plaintiff would be prejudiced by inclusion of the defense." *Houston*, 2010 WL 744119, at *3.  Motions to strike may not be granted where there are questions of fact with respect to affirmative defenses, and are disfavored even where the affirmative defenses raise only legal questions.  *See Simon v. Mfrs. Hanover Trust Co.*, 849 F. Supp. 880, 882 (S.D.N.Y. 1994) ("A motion to strike should not be allowed if the defense presents questions of fact, and 'even when the defense presents a purely legal question, the courts are very reluctant to determine disputed or substantial issues of law on a motion to strike; these questions quite properly are viewed as determinable only after discovery and a hearing on the merits.'") (quoting *Salcer v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984)).  Further, "while increased time and expense of trial may constitute sufficient prejudice to warrant granting [a motion to strike], mere assertions by the moving party that he is prejudiced are insufficient." *Cnty. Vanlines*, 205 F.R.D. at 153.

Swatch attempts to strike Bloomberg's affirmative defenses merely by arguing that each defense is insufficient on its face and does not raise any questions of law or fact with a general reference to the prejudice faced by Swatch.  Swatch has failed to meet the exceptionally high burden to strike each affirmative defense pursuant to Rule 12(f).

27

### 1.     Bloomberg's First And Second Affirmative Defenses

Bloomberg pled as its first affirmative defense that Swatch failed to state a cause of action and as its second affirmative defense that Swatch failed to assert a valid copyright for the reasons that are set forth above and in Bloomberg's motion to dismiss.  The Court should deny Swatch's motion to strike Bloomberg's first and second affirmative defenses.  For the reasons set forth above, the "law of the case" doctrine is not controlling, and there are issues of fact and law that the Court should consider further with respect to Swatch's entitlement to copyright protection for the Earnings Call and the sound recording of the call.  Further, the courts have recognized the affirmative defense for the failure to state a claim as a general denial, which need not be stricken.  *See Cnty. Vanlines*, 205 F.R.D. at 153 ("Furthermore, it is well settled that the failure-to-state-a-claim defense is a perfectly appropriate affirmative defense to include in the answer.  Although the defense is arguably redundant in that it is essentially a general denial, there is no prejudicial harm to plaintiff and the defense need not be stricken.") (internal quotations omitted).

### 2.     Bloomberg's Third Affirmative Defense

Bloomberg pled as its third affirmative defense the failure to join indispensible parties, since Swatch only named Bloomberg as a defendant in the instant case without considering whether any other parties involved in the transcription and recording of the Earnings Call were required parties.  As alleged in Bloomberg's Amended Answer and Counterclaim, a third party transcript service made a sound recording of the Earnings Call, prepared a written transcript of the Earnings Call, and provided  copy of the sound recording and the written transcript to Bloomberg.  (Am. Answer (Bloomberg's Counterclaims) ¶¶ 21-22.)  Swatch failed to name that third party as a defendant in the instant case and failed to undertake a legal analysis of whether that third party is a required party under Rule 19(a).  Also, the analysts who posed

questions on the Earnings Call have an ownership interest in answers that were given in response

to those questions.  Swatch similarly failed to name those analysts as defendants and did not

undertake a legal analysis of whether the analysts are required parties under Rule 19(a).  Because

there are open questions of fact and law that may allow Bloomberg's third affirmative defense to

succeed, Swatch's motion to strike should be denied.  *Houston*, 2010 WL 744119, at *3.

### 3.    Bloomberg's Fourth And Fifth Affirmative Defenses

Bloomberg's fourth and fifth affirmative defenses raise the issues of fair use and

the protections afforded by the First Amendment to news reporting.  For the reasons set forth

above, Bloomberg's fourth affirmative defense for fair use involves mixed questions of law and

fact.  Indeed, the Court has recognized that there are issues of material fact with respect to fair

use in this case, which require discovery.  *See* Order at 9.  Therefore, Swatch cannot strike

Bloomberg's fair use affirmative defense.  Further, to the extent that Swatch contends that

Bloomberg's First Amendment affirmative defense is subsumed within its fair use affirmative

defense, Swatch's motion to strike that affirmative defense should be denied for the same reason.

### 4.    Bloomberg's Sixth Affirmative Defense

Bloomberg's sixth affirmative defense of laches is based on the prejudice incurred

by Bloomberg due to Swatch's failure to complain earlier of Bloomberg's dissemination of its

analyst calls.  This defense raises questions of fact, and therefore should not be stricken.  "The

doctrine of laches requires proof that (a) the plaintiff was not diligent in litigating the action and

(b) the defendant was prejudiced by the delay."  *Oliner v. McBride's Indus., Inc.*, 106 F.R.D. 14,

20 n.6 (S.D.N.Y. 1985).  The courts have recognized that the necessary inquiry is often fact-

intensive and therefore not amenable to a 12(f) motion.  *See id.* ("Because the existence of

prejudice, and length of delay are questions of fact, the motion to strike the defense of laches is

denied."); *see also Bolanos v. Norwegian Cruise Lines Ltd.*, No. 01-civ-4182 (RMB), 2002 WL

1465907, at *7 (S.D.N.Y. July 9, 2002) ("Although a court may consider the defense of laches

on a motion to dismiss, courts generally are not inclined to do so because application of the

laches defense involves consideration of fact issues outside the pleadings . . . .") (internal

citations omitted); *Deere & Co. v. MTD Prods., Inc.*, No. 00-civ-5936, 2001 WL 435613, at *2

(S.D.N.Y. April 30, 2001) ("More important, a determination that a claim is barred by laches

requires a factual inquiry into the reasons for plaintiff's delay and the extent and nature of the

prejudice suffered by defendant as a result of that delay.  Again, this inquiry is inappropriate on a

motion to dismiss.") (internal citations omitted).

Bloomberg alleges that it relied on Swatch's prior conduct of allowing companies

to publish similar earnings calls, and that it has been prejudiced by Swatch's delay in asserting

copyrights claims.  These allegations raise questions of fact that should not be decided on a

motion to strike.

### 5.        Bloomberg's Seventh Affirmative Defense

Bloomberg seventh affirmative defense alleges fraud on the United States

Copyright Office (the "Copyright Office") due to Swatch's correspondence with the Copyright

Office in securing the copyright at issue in this case.  This affirmative defense also involves

questions of fact, and therefore ought not be dismissed.  *See Martal Cosmetics, Ltd. v. Int'l.*

*Beauty Exch. Inc.*, No. 01-cv-7595, 2010 WL 2179022, at *3 (E.D.N.Y. May 28, 2010) (holding

that the affirmative defense of fraud on the United States Patent and Trademark Office could not

be decided on a motion for summary judgment, where it raised questions of fact for trial.

*Newport Elecs., Inc. v. Newport Corp.*, 157 F. Supp. 2d 202, 217 (D. Conn. 2001) (denying a

motion to strike the affirmative defense of fraud on the grounds that there were material issues of

fact regarding knowledge and good faith belief with respect to the accuracy of a trademark

application).  Given that discovery has not commenced in the instant matter, Swatch's motion to strike the affirmative defense of fraud is, at best, premature.

Bloomberg recognizes that its affirmative defense for fraud was not pled with particularity.  However, Swatch has provided indications regarding its communications with the Copyright Office, which necessitated the inclusion of fraud as an affirmative defense by Bloomberg, and which will ultimately require discovery.  Therefore, to the extent that the Court finds that Bloomberg's affirmative defense for fraud lacks sufficient particularity, Bloomberg requests that the affirmative defense be dismissed *without* prejudice and that the Court grant Bloomberg the right to re-plead the affirmative defense after discovery.  *See EBS Dealing Res., Inc. v. Intercontinental Exch., Inc.*, 379 F. Supp. 2d. 521, 532 (S.D.N.Y. 2005) (granting leave to re-plead the affirmative defense of fraud, where the initial pleading lacked particularity).

### 6.      Bloomberg's Eighth And Ninth Affirmative Defenses

Bloomberg eighth affirmative defense alleges that Swatch's claims for statutory damages are barred or limited by the United States Constitution, and its ninth affirmative defense alleges that "[a]ny damages and profits sought by Swatch are limited, in whole or in part, pursuant to 17 U.S.C. § 504(b) and exclude deducible expenses and any elements of profit attributable to factors other than the alleged infringement of Swatch's copyrighted work," as limitations of damages allowed on Swatch's copyright infringement claims.  Swatch moves to strike these affirmative defenses on the grounds that they do not constitute an avoidance of liability and therefore are not properly asserted as affirmative defenses.  Swatch is wrong; a determination by the Court on the issues of law will allow Bloomberg's affirmative defenses to succeed, and thereby Swatch cannot strike the defenses at this stage of the litigation.  *Houston*, 2010 WL 744119, at *3.

The courts have declined to strike affirmative defenses pertaining to the limitation of damages in various contexts.  *See Oneida Indian Nation of N.Y. v. N.Y.*, 194 F. Supp. 2d 104, 132-33 (N.D.N.Y. 2002) ("Defendants raise a few defenses that request a set-off of any damages that might be awarded to [intervenor] as a result of this action.  These defenses have no effect on Defendants' liability, and they will not be stricken at this time because they are relevant to the calculation of damages."); *see also Allison v. Rite Aid Corp.*, No. 09-cv-06931, 2011 WL 435334, at *3 (S.D.N.Y. Sept. 26, 2011) (where defendant claims that culpable conduct by the plaintiff should limit damages in the context of comparative negligence, such conduct must be pled as an affirmative defense).

In addition, Swatch's argument overlooks to Rule 8(c)(2), which provides that "If a party mistakenly designates a defense as a counterclaim, or a counterclaim as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated . . . ." Fed. R. Civ. P. 8(c)(2).

Because there are questions of fact and law, which may allow Bloomberg's affirmative defenses pertaining to damages to succeed, Swatch's motion to strike the affirmative defenses should be denied.  *See Houston*, 2010 WL 744119, at *3.

## CONCLUSION

For the foregoing reasons, Bloomberg respectfully requests that the Court deny

Swatch's Motions for (1) Judgment on the Pleadings and (2) Order Striking Defendant's

Affirmative Defenses and grant such other and further relief as the Court deems just and proper.


Dated: New York, New York
       November 18, 2011

                                        ____/s/ Thomas H. Golden _____
                                        John M. DiMatteo
                                        Thomas H. Golden
                                        WILLKIE FARR & GALLAGHER LLP
                                        787 Seventh Avenue
                                        New York, NY 10019
                                        Telephone:  (212) 728-8000
                                        Email: jdimatteo@willkie.com
                                        Email: tgolden@willkie.com

                                        *Counsel for Defendant Bloomberg L.P.*