UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x

THE SWATCH GROUP MANAGEMENT
SERVICES LTD.,

                    Plaintiff,

    -against-

BLOOMBERG L.P.,

                    Defendant.

------------------------------------------------------------- x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:

**OPINION AND ORDER
GRANTING DEFENDANT
SUMMARY JUDGMENT**

11 Civ. 1006 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

      Plaintiff sued Defendant for infringement of a recorded telephone conference call between senior executives of Plaintiff's parent company and invited securities analysts. Defendant, although not invited to participate, obtained a recording of the call and made it available to the paid subscribers of its online business newscasting service. For the reasons described below, I hold that Defendant's publication of the recording was fair use and, on the basis of this defense to infringement, grant summary judgment to Defendant.

**I.  Facts**

      Plaintiff, a Swiss corporation, controls the intellectual property of many well-known watch brands. Its parent company, The Swatch Group Ltd. ("Swatch Group"), which produces, among other things, watches and watch components, is a public company whose stock trades on the Swiss Exchange. Defendant, a Delaware corporation, is a leading provider of business and financial information.

      On February 8, 2011, Swatch Group hosted a telephone conference call with invited securities analysts to discuss its financial results for the recently-closed accounting period

1

(the "Earnings Call"). All participants were advised that the call was being recorded by Swatch Group and that others should not record the call for publication or broadcast. During the call, Swatch Group senior executives made brief remarks and responded to the securities analysts' questions.

Plaintiff contends that the remarks and responses of the senior executives constitute an original work of authorship, that Swatch Group's recording of the Earnings Call (the "Copyrighted Work") fixed that work in a tangible medium, qualifying it for copyright protection, and that Plaintiff, Swatch Group's assignee, duly registered that work with the U.S. Copyright Office.

Defendant was not invited to participate in the Earnings Call. A "third party transcript service" accessed and made a recording of the Earnings Call and provided the recording to Defendant. Defendant then made the recoding (the "Infringing Work") available online to its paid subscribers, thus infringing Plaintiff's Copyrighted Work.

For purposes of this decision, I assume, without deciding, that Plaintiff's allegations are true, that Plaintiff's copyright is valid and that, absent a defense of fair use, Defendant infringed.

## II.  The Procedural Background

At the outset and before it filed an answer, Defendant moved to dismiss Plaintiff's Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), claiming, among other things, that its use was fair use and that, therefore, it had not infringed. I denied the motion, holding in part that a determination of fair use was fact-intensive and not one that I could make prior to discovery. Order Denying Motion to Dismiss, The Swatch Grp. Mgmt. Servs. v. Bloomberg

L.P., Doc. No. 27 (Aug. 30, 2011). Defendant then filed its Answer that, among other things, alleged fair use as an affirmative defense.

Still prior to discovery, Plaintiff moved for judgment on the pleadings, requesting, among other things, that I strike Defendant's fair use affirmative defense. The parties presented the record of the Copyright Office, a copy of the Copyrighted Work and a copy of the Infringing Work, as well as a transcript thereof.

As I noted in denying Defendant's motion to dismiss and discuss below, the determination of fair use is fact-intensive. However, from the parties' submissions with respect to Plaintiff's motion for judgment on the pleadings, it appeared that all relevant and material facts might be in the record and that fair use was not only an appropriate but also a compelling defense. I then notified the parties that I was considering granting Defendant judgment on that basis and gave Plaintiff leave to show that "triable issues of material fact [exist] with respect to Defendant's fair use affirmative defense." Summary Order, The Swatch Grp. Mgmt. Servs. v. Bloomberg L.P., Doc. No. 43 (Dec. 12, 2011).

## III.  The Standard of Review

With all submissions in hand, I now consider whether summary judgment can be granted to Defendant on the basis of Defendant's fair use affirmative defense. While fair use is often unsuitable for summary judgment, "the court may resolve issues of fair use at the summary judgment stage where there are no genuine issues of material fact . . . ." Bill Graham Archives v. Dorling Kindersley Ltd., 448 F.3d 605, 608 (2d Cir. 2006).

Plaintiff's motion for judgment on the pleadings and its response to my invitation for an additional submission afforded Plaintiff a full and fair opportunity to oppose summary judgment on the basis of Defendant's fair use affirmative defense and to present all that was

relevant or could be relevant. See Priestly v. Headminder, Inc., 647 F.3d 497, 504 (2d Cir. 2011) (explaining that a district court has discretion to grant summary judgment sua sponte where "the party against whom summary judgment is rendered has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried").

"Where it appears clearly upon the record that all of the evidentiary materials that a party might submit in response to a motion for summary judgment are before the court, a sua sponte grant of summary judgment against that party may be appropriate if those materials show that no material dispute of fact exists and that the other party is entitled to judgment as a matter of law." Ramsey v. Coughlin, 94 F.3d 71, 74 (2d Cir. 1996). "Before granting summary judgment sua sponte, the district court must assure itself that following the procedures set out in Rule 56 would not alter the outcome. Discovery must either have been completed, or it must be clear that further discovery would be of no benefit. The record must, therefore, reflect the losing party's inability to enhance the evidence supporting its position and the winning party's entitlement to judgment." Id. In its submission, Plaintiff contends that discovery is necessary and that triable issues of material fact exist. I address Plaintiff's contentions below.

## IV. Discussion

Section 107 of the Copyright Act of 1976 provides that "the fair use of a copyrighted work . . . is not an infringement of copyright." 17 U.S.C. § 107. In determining whether a particular use is fair, the factors to be considered include: "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." Id.

4

Defendant has the burden of proving that its use was fair. NXIVM Corp. v. The Ross Inst., 364 F.3d 471, 476 (2d Cir. 2004). Proof of fair use, however, does not require Defendant to prevail with respect to each of these four factors. Id. at 477. The factors should not be considered in isolation but "explored and weighed together, in light of copyright's purpose . . . ." Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 578 (1994). The analysis is not to be "simplified," nor are "bright-line rules" to be used; rather, the analysis is to be "open-ended and context-sensitive." Blanch v. Koons, 467 F.3d 244, 251 (2d Cir. 2006). The ultimate focus is the goal of copyright itself, whether "promoting the Progress of Science and useful Arts would be better served by allowing the use than by preventing it." Castle Rock Entertainment, Inc. v. Carol Publishing Group, Inc., 150 F.3d 132, 141 (2d Cir. 1998) (citations and internal quotation marks omitted); U.S. Const., art. 1, § 8, cl. 8.

### a. The Purpose and Character of the Use

Defendant's work as a prominent gatherer and publisher of business and financial information serves an important public interest, for the public is served by the full, timely and accurate dissemination of business and financial news. Swatch Group is a foreign issuer, but its products are sold in the United States and its securities, including ADRs, are bought and sold by American investors. It is not a coincidence that American securities analysts were among those invited to participate in the Earnings Call.

Defendant is a for-profit corporation and its subscribers pay for their access to Defendant's online business newscasting service. Although many fair use cases involve use by not-for-profit users and this statutory factor explicitly asks whether the use is of a "commercial nature" or for "nonprofit educational purposes," 17 U.S.C. § 107(1), the presence or absence of a profit-making motive is not dispositive as to this factor or the overall fair use analysis.

Campbell, 510 U.S. at 584. Indeed, news reporting, generally conducted by for-profit entities, is specifically identified in the preamble paragraph of § 107 as a category of potentially fair use.

Another consideration is whether the particular use is "transformational," that is whether it "adds something new," of a "different character," or "new expression, meaning or message," Campbell, 510 U.S. at 578-79 (citations and internal quotation marks omitted), for "an untransformed copy is likely to be used simply for the same intrinsic purpose as the original, thereby providing limited justification for a finding of fair use." Am. Geophysical Union v. Texaco Inc., 60 F.3d 913, 923 (2d Cir. 1995).

Again, however, nothing follows inevitably, and a "transformative use is not absolutely necessary for a finding of fair use . . . ." Campbell, 510 U.S. at 579; see Blanch, 467 F.3d at 252 n.3 ("Nor is transformativeness necessarily the only important factor."). Indeed, news reporting requires accuracy, which may be undermined by transformation.

Plaintiff contends that fair use should not be found because Defendant lacked good faith in acquiring the recording of the Earnings Call and distributing the Infringing Work. See NXIVM Corp., 364 F.3d at 478. As with the other criteria, fair use does not depend on a finding of good faith. Id. at 479. Indeed, news-gathering organizations frequently publish information obtained clandestinely and in breach of conditions of confidentiality. The robust quality of the First Amendment would be compromised if the news media were confined to authorized sources for its reporting. See New York Times Co. v. United States, 403 U.S. 713 (1971).

In sum, the purpose and character of Defendant's use advanced the public interest of furthering full, prompt and accurate dissemination of business and financial news.

**b. The Nature of the Copyrighted Work**

6

Although Plaintiff claims, and presumably has the right to claim, copyright on the original expressions of Swatch Group's senior executives, there is very little of the Earnings Call that could qualify as such. See Ex. B Decl. Golden Supp. Mot. Dismiss, The Swatch Grp. Mgmt. Servs. v. Bloomberg L.P., Doc. No. 9 (Mar. 31, 2011) (the Copyrighted Work). The comments and questions of the securities analysts are not copyrightable by Swatch Group and, in fact, were disclaimed by Plaintiff. Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 348 (1991) ("The mere fact that a work is copyrighted does not mean that every element of the work may be protected. Originality remains the sine qua non of copyright; accordingly, copyright protection may extend only to those components of a work that are original to the author."). Furthermore, the factual content of the remarks and responses made by the Swatch Group senior executives is not copyrightable. Id. at 347. ("No one may claim originality as to facts. This is because facts do not owe their origin to an act of authorship.") (citation and internal quotation marks omitted).

What we have left is at best a "thin" copyright. Id. at 349. The whole purpose of the Earnings Call was to present Swatch's financial condition and business performance in its recently-completed financial period to a selected group of securities analysts. The "manifestly factual character" of the Earnings Call means that it is not "within the core of the copyright's protective purposes." Am. Geophysical, 60 F.3d at 925 (citations and internal quotation marks omitted). Little, if anything, is consistent with the core and purpose of copyright protection, for little, if anything, "display[s] the stamp of the author's originality." Harper & Row, Publishers, Inc. v. Nation Enterprises, 471 U.S. 539, 547 (1985).

In analyzing the nature of a copyrighted work, courts consider "(1) whether the work is expressive or creative, such as a work of fiction, or more factual, with a greater leeway

7

being allowed to claim for fair use where the work is factual or informational, and (2) whether the work is published or unpublished, with the scope of fair use involving unpublished works being considerably narrower." Blanch, 467 F.3d at 256 (internal quotation marks omitted). Generally, the scope of fair use is greater with respect to factual than non-factual works because there is "a greater need to disseminate factual works than works of fiction or fantasy. Even within the field of fact works, there are gradations as to the relative proportion of fact and fancy. One may move from sparsely embellished maps and directories to elegantly written biography. The extent to which one must permit expressive language to be copied, in order to assure dissemination of the underlying facts, will thus vary from case to case." Harper & Row, 471 U.S. at 563 (citations and internal quotation marks omitted).

Furthermore, the scope of fair use is generally narrower with respect to an unpublished work because "[u]nder ordinary circumstances, the author's right to control the first public appearance of his undisseminated expression will outweigh a claim for fair use." Id. at 555. Here, however, the first publication of Swatch Group's expression occurred prior to Defendant's publication of the Infringing Work.

### c. The Amount and Substantiality of the Portion Used

The third statutory fair use factor is "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). This factor "asks whether the amount and substantiality of the portion used in relation to the copyrighted work as a whole . . . are reasonable in relation to the purpose of the copying. Campbell, 510 U.S. at 586 (citations and internal quotation marks omitted); see Infinity Broad. Corp. v. Kirkwood, 150 F.3d 104, 109 (2d Cir. 1998) ("The third factor . . . recognizes that the more of a copyrighted work

that is taken, the less likely the use is to be fair, and that even a less substantial taking may be unfair if it captures the essence of the copyrighted work.").

Defendant used the entire Copyrighted Work. While this generally weighs against fair use, it does not preclude a finding of fair use. See, e.g. Sony Corp. of America v. Universal Studios, Inc., 464 U.S. 417, 449-50 (1984); Infinity, 150 F.3d at 109. Furthermore, insomuch as a public interest is served by Defendant's dissemination of the information contained in the Copyrighted Work, that interest is better served by the dissemination of that information in its entirety, including the incidents of oral speech that do not translate onto the page but color the purely factual content.

### d. The Effect of the Use Upon the Potential Market for or Value of the Copyrighted Work

This factor "requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the original. The enquiry must take account not only of harm to the original work but also of harm to the market for derivative works." Campbell, 510 U.S. at 590 (citations and internal quotation marks omitted). Plaintiff would have the Court analyze the market effect of Defendant's publication of the entire Infringing Work. However, the relevant market effect is that which stems from Defendant's use of the original expression of Swatch Group's senior officers, not that which stems from Defendant's work as a whole. Arica Inst., Inc. v. Palmer, 970 F.2d 1067, 1078 (2d Cir. 1992). Nothing in the record suggests any possible market effect stemming from Defendant's use of such a limited portion of the recording of the Earnings Call. Nor does common sense.

9

In more general terms, this factor requires "a balancing of the benefit the public will derive if the use is permitted and the personal gain the copyright owner will receive if the use is denied." Bill Graham, 448 F.3d at 613 (internal quotation marks omitted). Swatch Group used the Earnings Call to disseminate the information of its choosing in the fashion of its choosing to create a perception of its financials and business performance that Swatch Group believed to be advantageous. For Swatch Group, this was the value of the Earnings Call and Defendant's use was not at odds with Swatch Group maximizing this value. Furthermore, as discussed above, Defendant's use conferred substantial benefit on the public and if Defendant's use was denied, little if any personal gain would accrue to Swatch Group as a result, even if Swatch Group sought to use the recording of the Earnings Call in the manner employed by Defendant.

### c. There are No Triable Issues of Fact and No Need for Discovery

Plaintiff contends that with respect to Defendant's fair use affirmative defense, discovery is necessary and triable issues of material fact exist. First, Plaintiff argues that discovery is necessary with respect to Defendant's "reasons for acquiring and publishing the unauthorized recording," specifically whether Defendant "acquired and distributed the copyrighted material pursuant to a 'news reporting' function, as opposed to an aspect of [Defendant's] business which is not 'news reporting.'" The Swatch Grp. Mgmt. Servs. v. Bloomberg L.P., Doc. No. 52 at 12 (Jan. 27, 2012) ("Pl.'s Mem. Law"). However, any such issues of fact are irrelevant to my analysis of Defendant's use. I agree that Defendant's use was commercial, but I find it crucial that Defendant's use served an important public interest in disseminating business-related information promptly and fully with respect to Swatch Group.

10

Second, Plaintiff argues that discovery is necessary with respect to Defendant's "state of mind" and "good faith in acquiring and distributing the unauthorized recording of Swatch Group's earnings call." Pl.'s Mem. Law at 13-15. However, any such issues of fact are irrelevant to my analysis of Defendant's use as I credited Plaintiff's allegations that Defendant was not authorized to access the Earnings Call and that Defendant's publication of the Infringing Work violated the directive regarding publication of a recording of the Earnings Call.

Third, Plaintiff argues that discovery is necessary with respect to whether Defendant's use was transformative. Pl.'s Mem. Law at 15-16. However, any such issues of fact are irrelevant to my analysis of Defendant's use for I accepted that Defendant's use was not transformative.

Fourth, Plaintiff argues that material issues of fact exist with respect to why Plaintiff brought this action. Pl.'s Mem. Law at 17. However, this issue is irrelevant to my analysis of Defendant's use.

Fifth, Plaintiff argues that material issues of fact exist with respect to "whether Plaintiff's work of authorship includes incidents of oral speech that do not translate onto the page, such as accent, meter, pacing, and the like." Pl.'s Mem. Law at 17. I accept that Plaintiff's work of authorship includes such incidents of oral speech. Indeed, the nonverbal "winks and nods" and inflections and emphasis of the Swatch Group senior executives' speech directly bears on the reliability and credibility of their remarks and responses to the securities analysts' questions.

Sixth, Plaintiff argues that discovery is necessary with respect to the fourth statutory factor because Defendant, not Plaintiff, has information regarding the existence of a potential

11

market for recordings of earnings calls. Pl.'s Mem. Law at 19-20. However, any such issues of fact are irrelevant in light of my conclusions above.

## V. Discussion

The parties have presented a full record enabling me to rule on the single, dispositive issue of the case, whether Defendant's use of Plaintiff's Copyrighted Work qualifies as fair use. Having considered the statutory fair use factors and weighed them together in light of the purposes of copyright, I conclude that copyright law's goals are better served by allowing Defendant's use of Plaintiff's work than preventing it and I hold that Defendant's use qualifies as fair use. Furthermore, I hold that there are no material factual issues to be tried, and that discovery would not produce any such issues. Accordingly, since Defendant's use qualifies as fair use, Defendant has not infringed, and Plaintiff's Second Amended Complaint should be dismissed.

The clerk shall enter judgment in favor of Defendant.

SO ORDERED.

Dated: May __, 2012
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

12